STATE of North Dakota, County of
Cass, ex rel. Marlin NIESS,
Plaintiff and Appellee,

v.

Betty ZILLMER, Defendant
and Appellant.

Civ. No. 890203.

Supreme Court of North Dakota.

Dec. 20, 1989.

Weiss, Wright & Paulson, Jamestown, for defendant and appellant; argued by Robert W. Martin.

Mark Rainer Boening (argued), Asst. States Atty.; Fargo, for plaintiff and appellee.

ERICKSTAD, Chief Justice.

Betty Zillmer appeals from an order of the District Court for Cass County denying her motion to vacate judgment and award attorney fees. We affirm but remand for further proceedings.

On July 24, 1974, the District Court for Stutsman County temporarily ordered that two of Zillmer's children, Jane (a pseudonym) and Lance (a pseudonym), be taken into the custody and control of the Director of the Stutsman County Welfare Board. On February 17, 1976, the district court placed the children in the care, custody, and control of the Stutsman County Social Service Board until February 17, 1978.[1]

1. In its findings of fact, the district court, in relevant part found:

"II.

"That the above named children are deprived minors as defined by law in that they are without proper parental care; that the parents are divorced; that said minors have been under the jurisdiction of the Court since June 9, 1970;

After the expiration of a final temporary order dated February 17, 1978, the Stutsman County Social Service Board recommended the termination of Betty Zillmer's parental rights to Jane and Lance. Marlin Niess, the children's natural father, indicated by letter received by the juvenile court on April 28, 1978, a willingness to terminate his parental rights, but he would do so only after Zillmer had done so.[2]

On November 3, 1978, Zillmer executed relinquishments of parental rights to both Jane and Lance,[3] which were filed with contemporaneous certificates of execution signed by the Honorable M.C. Fredricks, Judge of the District Court.[4] Niess, however, failed to voluntarily terminate his parental rights. A petition for termination of his parental rights was filed on February 6, 1979. The juvenile court, through Howard V. Egan, Jr. (the Juvenile Supervisor for Stutsman County), asserted in paragraph III of the petition that Zillmer had voluntarily terminated her parental rights.[5]

---

"III.

"The Court further finds, from clear and convincing evidence:

1. That the above named children come within the provisions of the Uniform Juvenile Court Act (Chapter 27–20, NDCC) and are deprived children;

2. That the parents of said children are unable to provide for the care, maintenance, health, education and morals of said children; and that a continuation of said children in their home would be contrary to the welfare of said children."

The district court then ordered:

"II.

"That said children, subject to the further order of the Court, are hereby placed under the care, custody and control of the Director of the Stutsman County Social Service Board until the 17th day of February, 1978, for placement in suitable foster homes approved by the Court; that the Stutsman County Social Service Board shall pay for such foster care and other necessary expenses, subject to reimbursement by Respondent Marlin Niess to the extent of his ability."

**2.** Niess indicated a willingness to voluntarily terminate his parental rights in the following letter to the juvenile court:

"I am writing to you concerning [Jane] and [Lance] Niess, my daughter and son, who have been in foster care for more than 3 yrs. and are in custody of the court.

"After much thought and prayer, I have decided that it would be in the best interest of [Jane] and [Lance] if I would terminate parental rights, so they could be adopted, and have a permanent home, but I will only do so after their Mother does the same."

**3.** The pertinent parts of the relinquishments follow:

"2. That the undersigned, believing it to be in the best interest and to promote the future welfare of said child, hereby:

a. Surrenders the care, custody and control of said child to *The Executive Director,* of *State Social Service Board,* State of *North Dakota,* a licensed child-placing agency and authorizes said child-placing agency to place said child for adoption;

\* \* \* \* \* \*

"3. That the undersigned recognizes that said child-placing agency will place said child with a view to adoption by suitable adoptive parents and that by virtue of a judicial decree of adoption said child will become a lawful child and heir at law of the adoptive parents, with all the rights, privileges and obligations of a natural born child, the same as if said child had been born to them;

"4. That the undersigned is aware of her right to withdraw this Relinquishment of Parental Rights within TEN days after it is signed by her or within TEN days after the child is born, whichever is later;

\* \* \* \* \* \*

"6. That the undersigned executes this Relinquishment of Parental Rights and consents to the adoption of said child of her own free will and accord, for the purpose of facilitating the adoptive placement and adoption of said child by suitable adoptive parents who are strangers and unknown to her."

**4.** The body of the certificate contained the following language:

"I hereby certify that the foregoing Relinquishment of Parental Rights was on the *3rd* day of *November, 1978,* signed by *Betty Zillmer, formerly Betty Niess,* the subscriber, in my presence as a judge of a court of record of this state; that said instrument was read by the undersigned to the subscriber before he signed it; that the subscriber appeared to understand the nature and effect of said instrument and the consequences of her signing the same; and she signed said instrument of her own free will and accord."

**5.** Paragraph III of the Petition for Termination of Parental Rights, dated February 6, 1979, reads:

"III.

"That the natural mother of the above named children, Betty Niess Zillmer, 1114 Western Park Village, Jamestown, North Dakota, has voluntarily terminated her parental rights to [Lance] and [Jane] Niess on the 3rd day of November, 1978, that she has had no contact with [John, a pseudonym] and appears willing to voluntarily terminate on him also."

Judge Fredricks, by an order dated May 24, 1979, found that Niess was taking steps to correct his shortcomings as a parent, and on that basis, denied the petition to terminate his parental rights and awarded custody of Jane and Lance to him. No mention was made in that order of Zillmer except that she did not appear.

In January 1985, Niess applied for, and received, AFDC benefits from Cass County Social Services for the months of January and February 1985, and November 1987, totaling $781.00. Niess assigned his rights to support to Cass County as a part of the AFDC process. On January 19, 1988, Zillmer was served with a Summons and Complaint dated January 15, 1988, praying for reimbursement of AFDC funds expended on behalf of Jane and Lance pursuant to section 14–09–08, N.D.C.C.[6]

Zillmer failed to answer or appear. As a result, a judgment dated February 18, 1988, was entered against her by default in Cass County.[7] The default judgment was transcribed and docketed in the District Court for Stutsman County on March 23, 1988, which was Zillmer's county of residence. An order to show cause was issued on June 7, 1988.

On March 3, 1989, the District Court for Stutsman County[8] issued an order dismissing the original order to show cause, with prejudice, stating that Zillmer had formally and properly relinquished her parental rights to the children in question on November 3, 1978.

On March 20, 1989, the Internal Revenue Service intercepted $781.00 of Zillmer's 1988 income tax refund to satisfy the past due support obligation. Upon the failure of negotiations to release the intercepted $781.00, Zillmer made a motion in the District Court for Cass County to vacate the default judgment and award attorney fees pursuant to Rule 60(b)(iv), N.D.R.Civ.P., and Rule 3.2, N.D.R.O.C. This motion was

denied by the District Court for Cass County on June 5, 1989, and formed the basis of this appeal.

This issue on appeal from an order denying a Rule 60(b), N.D.R.Civ.P., motion is generally whether or not the trial court abused its discretion in so doing. *Kuehl v. Lippert*, 401 N.W.2d 523, 525 (N.D.1987); *First Nat. Bank of Crosby v. Bjorgen*, 389 N.W.2d 789, 794 (N.D.1986).

On appeal, Zillmer argues that there was an effective termination of her parental rights on November 3, 1978; that the default judgment was entered on the faulty premise that Zillmer owed a duty to support the children; that the default judgment is therefore void; and that the lower court erred in denying her motion to vacate the judgment and award attorney fees.

■ Our first task is to determine whether or not there was an effective termination of Zillmer's parental rights as to Jane and Lance. The Revised Uniform Adoption Act, section 14–15, N.D.C.C., provides for the relinquishment and termination of a parent and child relationship. Section 14–15–19, N.D.C.C., in relevant part reads:

"*Relinquishment and termination of parent and child relationship.*

"1. The rights of a parent with reference to a child, including parental right to control the child or to withhold consent to an adoption, may be relinquished and the relationship of parent and child terminated in or prior to an adoption proceeding as provided in this section.

"2. All rights of a parent with reference to a child, including the right to receive notice of a hearing on a petition for adoption, may be relinquished and the relationship of parent and child terminated by a writing, signed by the par-

---

6. Section 14–09–08, N.D.C.C., reads:

  "*Mutual duty to support children.* Parents must give their children support and education suitable to the child's circumstances."

7. The judgment was ordered by the Honorable Lawrence A. Leclerc, and the order to show

cause which followed was executed by the Honorable Robert Eastburn, Referee on assignment by the Honorable Robert L. Eckert, Presiding Judge.

8. This order was executed by the Honorable Gordon O. Hoberg, District Judge.

ent, regardless of the age of the parent:

a. In the presence of a representative of an agency taking custody of the child, whether the agency is within or without the state or in the presence and with the approval of a judge of a court of record within or without this state in which the minor was present or in which the parent resided at the time it was signed, which relinquishment may be withdrawn within ten days after it is signed or the child is born, whichever is later; and the relinquishment is invalid unless it states that the parent has this right of withdrawal."

Section 14–15–19(2)(a), N.D.C.C., provides for termination of parental rights in anticipation of a valid adoption. It requires a writing signed by the parent relinquishing the right in the presence of a representative of an agency taking custody of the child or in the presence and with the approval of a judge of a court of record.[9]

In signing the relinquishment form, a parent gives up all rights with reference to the child, including any right to notice as to the disposition of the child.[10] Zillmer signed the relinquishment forms in the presence of the Honorable M.C. Fredricks on November 3, 1978, who then signed the certificates of execution. The record does not disclose that she has had any contact with the children since that time.

On February 6, 1979, a Notice of Hearing was issued as to the termination of the parental rights of Marlin Niess and Betty Niess Zillmer with respect to three of their children, including Jane and Lance.[11] Notwithstanding this reference to Jane and Lance, the court apparently concluded after hearing that it was not necessary to terminate the rights of Zillmer as to the two children, because she had already voluntarily done so on November 3, 1978. In light of the circumstances of this case we conclude that in signing the certificate of relinquishment Judge Fredricks approved ·the relinquishment although he did not specifically say so.

Although there is no specific order terminating Zillmer's parental rights as to Jane and Lance, it appears that section 14–15–19(2)(a), N.D.C.C., itself results in a voluntary termination if and when the judge is satisfied there has been a knowing and voluntary termination and the judge approves the termination. We conclude that Zillmer's parental rights were terminated as to Jane and Lance on November 3, 1978.

■ Zillmer next contends that the default judgment is void, as indicated by her 60(b)(iv)[12] motion, which was denied by the trial court.

---

9. The comments in the Handbook of the National Conference of Commissioners on Uniform State Laws (1971) do not seem to indicate the need for any further proceedings to terminate the parental rights. The comments in relevant part read:

"This section supplies an important omission from a number of earlier adoption acts. Many acts make no provision for relinquishing or terminating the requirement of consent by a parent. While a number of states provided in the Juvenile Court Act or elsewhere in the statutory law a procedure for termination of parental rights, there was nothing in the Adoption Act requiring recognition of such proceedings as a method of eliminating the requirement of parental consent.

"This section provides two methods of eliminating the necessity of consent by a parent: voluntary relinquishment of parental rights under subsection (b) by a writing signed by the parent; and a court order terminating parental rights under subsection (c) on the grounds specified in that section."

10. The North Dakota Legislature, in 1989, revised Chapters 14–15 (Revised Uniform Adoption Act), 14–17 (Uniform Parentage Act), and 27–20 (Uniform Juvenile Court Act) of the North Dakota Century Code to specifically allow for the entitlement to legal counsel during all stages of a proceeding to terminate the parent and child relationship if the child is to be placed for adoption by a child-placing agency licensed under Chapter 50–12. These amendments are codified at sections 14–15–19.1, 14–17–18(2), and 27–20–45(5), N.D.C.C. As these amendments were not effective until July 18, 1989, they are not applicable to this case.

11. At oral argument, Zillmer's counsel conceded that Zillmer may have received this notice because it was in reference to three of her children, one of whom she had not voluntarily relinquished her parental rights.

12. Rule 60(b), N.D.R.Civ.P., provides in part: "On motion and upon such terms as are just, the court may relieve a party or his legal

In *First Nat. Bank of Crosby v. Bjorgen, supra,* 389 N.W.2d at 793, we said:

"A motion under subdivision (iv), unlike a motion under the other five subdivisions of Rule 60(b), is not left to the court's discretion. *State Bank of Burleigh County Trust v. Patten,* 357 N.W.2d 239, 242 (N.D.1984); *State v. Red Arrow Towbar Sales Co.,* 298 N.W.2d 514, 516 (N.D.1980)."

The question which must be resolved is whether or not the default judgment issued by the district court was void as a matter of law. As the moving party, Zillmer has the burden of establishing sufficient grounds for disturbing the finality of such judgment. *State v. Red Arrow Towbar Sales Co.,* 298 N.W.2d 514, 515 (N.D.1980).

A judgment may be void if the court lacks subject matter jurisdiction over the action or personal jurisdiction over the parties. *Production Credit Ass'n v. Dobrovolny,* 415 N.W.2d 489, 491 (N.D.1987). However, no such contentions are made by Zillmer. Zillmer argues that the judgment is void because it was entered on the premise that Zillmer owed a duty to support the children.

In *Production Credit Ass'n v. Dobrovolny, supra,* appellants contended that a default judgment of foreclosure on a real estate mortgage was void because it was "unlawful and contrary to the laws of the State of North Dakota." *Dobrovolny* at 490. In assessing subsection (iv) of Rule 60(b), we said:

"The Dobrovolnys have not raised an issue about subject matter jurisdiction or personal jurisdiction. Their argument relates to whether or not the district court correctly applied North Dakota's redemption statutes in rendering its judgment. We therefore conclude that the district court judgment was not void and our analysis turns to the remaining grounds for setting aside the judgment pursuant to N.D.R.Civ.P. 60(b).

\*   \*   \*   \*   \*   \*

representative from a final judgment or order in any action or proceeding for the following

"[T]he Dobrovolnys have not presented any reason to set aside the judgment within the criteria enumerated in Rule 60(b). The fact that the district court may have made a mistake of law does not justify setting the judgment aside under Rule 60(b)."

*Dobrovolny* at 491–92. The appellants in *Dobrovolny* made their motion under Rule 60(b) generally, whereas Zillmer made her motion under the specific subsection (iv) of Rule 60(b). As Zillmer so limited her motion, the district court did not consider any other part of the rule, nor can we. In light of the response, however, of counsel for the State to questions in oral argument in our Court that if this Court determines that this woman's parental rights were terminated that he would agree that it would be appropriate to vacate the judgment, we think it is appropriate to remand this case to the district court for consideration of such other parts of Rule 60(b), N.D.R. Civ.P., as may be pursued by Zillmer.

As the default judgment is not void, the district court did not err in denying the Rule 60(b)(iv) motion. In the interests of justice, however, we remand for further proceedings under the other subsections of Rule 60(b) as shall be appropriate.

Zillmer also made a motion for attorney fees pursuant to section 28–26–01, N.D.C.C. That statute provides in relevant part:

"*Attorney's fees by agreement—Exceptions—Awarding of costs and attorney's fees to prevailing party.*

\*   \*   \*   \*   \*   \*

"2. In civil actions the court shall, upon a finding that a claim for relief was frivolous, award reasonable actual and statutory costs including reasonable attorney's fees to the prevailing party. Such costs must be awarded regardless of the good faith of the attorney or party making the claim for relief if there is such a complete absence of actual facts or law that a

reasons: ... (iv) the judgment is void."

reasonable person could not have thought a court would render judgment in their favor, providing the prevailing party has in responsive pleading alleged the frivolous nature of the claim. This subsection does not require the award of costs or fees against an attorney or party advancing a claim unwarranted under existing law, if it is supported by a good faith argument for an extension, modification, or reversal of the existing law."

We conclude that the claim of the state and county proceeding ex rel is not frivolous and, accordingly, we affirm the district court's denial of attorney fees.

We affirm the judgment but remand for further proceedings consistent with this opinion.

VANDE WALLE, LEVINE, MESCHKE and GIERKE, JJ., concur.