2002 ND 136

Jane ROE, Plaintiff and Appellee,

v.

John DOE, Defendant and Appellant,

Lora Siegfried, Director, Sioux County
Social Service Board as assignee
for Jane Roe, Appellee.

No. 20020016.

Supreme Court of North Dakota.

Aug. 15, 2002.

Vance Gillette, New Town, for defendant and appellant.

Kent M. Morrow, Severin, Ringsak & Morrow, Bismarck, for plaintiff and appellee.

Tyrone Jay Turner, Special Assistant State's Attorney, Child Support Enforcement, Burleigh County Courthouse, Bismarck, for appellee.

MARING, Justice.

[¶ 1] John Doe, (a pseudonym), appeals from an order denying his motion to vacate a 1989 amended judgment which established Doe as the father of a child born to Jane Roe, (a pseudonym), and required him to pay child support. We affirm.

I

[¶ 2] Jane Roe is a member of the Standing Rock Sioux Tribe of the Standing Rock Sioux Reservation, and John Doe is a member of Three Affiliated Tribes of the Fort Berthold Reservation. In 1987, Roe and Doe began living together in an apartment in Grand Forks, North Dakota. On November 2, 1988, Roe gave birth to a child in Grand Forks, North Dakota. On November 7, 1988, Doe signed an acknowledgment of paternity of the child. In early 1989, Roe and Doe ceased living together. On May 17, 1989, Roe brought an action in district court to establish paternity, custody, and child support.

[¶ 3] In August of 1989, Roe and Doe entered into a stipulation that Doe was the father of the child born to Roe and that Doe pay $75.00 per month in child support. The stipulation was submitted to the district court for incorporation into the judgment. In October of 1991, the amended judgment was transcribed to Grand Forks County. In November of 1993, Doe's child support obligation was increased to $133.00 per month. In December of 1993, the judgment was transcribed to Burleigh County.

[¶ 4] In June of 1999, a motion to increase Doe's child support obligation was filed. In July of 1999, Doe stipulated that if genetic testing showed he was the father of the child he would pay $1064.00 per month in child support. Genetic testing showed a 99.87 percent probability that Doe could not be excluded as the father of the child. In March of 2000, the judgment was amended to reflect that Doe was required to pay $1,064.00 per month in child support. In June of 2000, Doe was found in contempt for failure to pay child support.

[¶ 5] In October of 2001, approximately twelve years after the entry of the judgment, Doe filed a N.D.R.Civ.P 60(b)(iv)

motion to vacate the amended judgment entered on August 31, 1989. Doe argued the amended judgment was void because the trial court lacked subject matter jurisdiction to enter it. Doe argued the trial court lacked subject matter jurisdiction because, at the time the paternity action was filed, the legal residence of Roe and the child was Standing Rock Sioux Reservation. He further argued that, at the time the action was filed, he was a member of Three Affiliated Tribes and a legal resident of the Fort Berthold Reservation, but was living off the reservation to attend school in Grand Forks, North Dakota. Doe contended in an affidavit he did not know, the place of conception. Neither Doe nor Roe requested an evidentiary hearing, and the motion was submitted on the record, briefs, exhibits and affidavits. The trial court denied Doe's motion, and Doe appealed the court's January 3, 2002 order.

II

■ [¶ 6] Our standard of review for motions under Rule 60(b)(iv) is plenary. *See First Western Bank & Trust v. Wickman*, 527 N.W.2d 278, 279 (N.D.1995). When a motion challenges a judgment as void under Rule 60(b)(iv), the court's sole task is to determine the validity of the judgment. *Id.* Unlike other Rule 60(b) motions, a court has no discretion in deciding whether to grant a Rule 60(b)(iv) motion. *Id.* Like other Rule 60(b) motions, however, the burden is on the party bringing a Rule 60(b)(iv) motion to show sufficient grounds exist for disturbing the finality of the judgment. *See Johnson, Johnson, Stokes, Sandberg, & Kragness, Ltd. v. Birnbaum*, 555 N.W.2d 583, 585 (N.D.1996); *State ex rel. Niess v. Zillmer*, 449 N.W.2d 812, 816 (N.D.1989); *State v. Red Arrow Towbar Sales Co.*, 298 N.W.2d 514, 515–16 (N.D.1980); *see also Cramer v. Wade*, 985 P.2d 467, 470 n. 2 (Alaska

1999); *Boyer v. Boyer*, 1999 ME 128, ¶ 6, 736 A.2d 273; *In re W.M.*, 778 P.2d 1106, 1109 (Wyo.1989). *But cf.* Theresa L. Kruk, Annotation, *Who has Burden of Proof in Proceeding Under Rule 60(b)(4) of Federal Rules of Civil Procedure to Have Default Judgment Set Aside on Ground that it is Void for Lack of Jurisdiction*, 102 A.L.R. Fed. 811 (noting that when a party brings a motion to vacate a default judgment under Rule 60(b)(4), some courts place the burden of proving the existence of jurisdiction on the party opposing the motion). If the judgment is valid, the Rule 60(b)(iv) motion must be denied. *See First Western Bank & Trust*, at 279. If the judgment is void, the motion must be granted. *Id.* The question to be resolved is whether the judgment is void as a matter of law. *Id.* A judgment entered without subject matter jurisdiction is void. *See McKenzie County Social Service Bd. v. C.G.*, 2001 ND 151, ¶ 10, 633 N.W.2d 157.

III

[¶ 7] "[T]he determination of the parentage of a child of Indian tribal members is intimately connected with the right of reservation Indians to make their own laws and be ruled by them." *McKenzie County Social Service Bd. v. C.G.*, 2001 ND 151, ¶ 15, 633 N.W.2d 157. We have held, therefore, under certain circumstances, tribal courts have exclusive jurisdiction over paternity actions. *See id.* at ¶ 18; *In re M.L.M.*, 529 N.W.2d 184, 186 (N.D.1995); *McKenzie County Social Services Bd. v. V.G.*, 392 N.W.2d 399, 402 (N.D.1986). We based our decisions in *McKenzie County Social Services Bd. v. V.G.*, *In re M.L.M.*, and *McKenzie County Social Service Bd. v. C.G.* on the infringement test of *Williams v. Lee*, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959). *See McKenzie County Social Services Bd. v.*

*V.G.,* 392 N.W.2d at 402 (citing *Williams,* 358 U.S. at 223, 79 S.Ct. 269, 3 L.Ed.2d 251). Under the infringement test, state court jurisdiction over certain claims is not allowed if it "would undermine the authority of the tribal courts over reservation affairs and thereby infringe on the right of the Indians to govern themselves." *See id.*

■ [¶ 8] There are two categories of claims over which the United States Supreme Court has held tribal courts have exclusive civil jurisdiction under the infringement test. Included in the first category are those claims in which a non-Indian asserts a claim against an Indian for conduct occurring on that Indian's reservation. *See Williams,* 358 U.S. at 223, 79 S.Ct. 269, 3 L.Ed.2d 251. In the second category, are those claims in which all the parties are members of the same Indian tribe and the claim involves conduct occurring on that tribe's reservation. *See Fisher v. District Court,* 424 U.S. 382, 387–89, 96 S.Ct. 943, 47 L.Ed.2d 106 (1976) (per curiam). It has also been noted that an Indian tribe has exclusive jurisdiction over wholly internal tribal subject matter, such as membership disputes, divorce actions between members domiciled on the reservation, and certain probate actions. *See* William C. Canby, Jr., *American Indian Law In A Nutshell,* 187, 198–99, 202 (1998); *see also Montana v. United States,* 450 U.S. 544, 564, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981) ("Indian tribes retain their inherent power to determine tribal membership, to regulate domestic relations among members, and to prescribe rules of inheritance for members."); *Smith v. Babbitt,* 100 F.3d 556, 558 (8th Cir.1996) ("Essentially, therefore, a membership dispute is an issue for a tribe and its courts."). Additionally, under the Indian Child Welfare Act [ICWA], Congress has given tribal courts exclusive jurisdiction "over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law." 25 U.S.C. § 1911(a). Neither paternity proceedings nor custody proceedings that are part of a divorce action fall under ICWA's mandate of exclusive tribal court jurisdiction. *See* 25 U.S.C. § 1903(1) (specifically excluding custody determinations in a divorce action); *State v. Zaman,* 190 Ariz. 208, 946 P.2d 459, 462 (1997) (concluding ICWA does not apply to paternity actions and even the policy underlying ICWA does not apply to a paternity action where there is no threat that the child will not be exposed to his or her Indian heritage); *see also* 25 U.S.C. § 1902 (stating that ICWA establishes "minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture"). Although we are concerned with exclusive tribal court civil jurisdiction in this case, we also note that an Indian tribe has exclusive criminal jurisdiction over crimes committed by Indians against Indians in Indian country unless such crimes fall within the Major Crimes Act of 18 U.S.C. § 1153. *See* Canby, *supra,* at 158–59. However, "[o]utside of Indian country, the state has general criminal jurisdiction over all persons, including Indians." *Id.* at 165.

[¶ 9] In *McKenzie County Social Services Bd. v. V.G.,* we held a tribal court had exclusive civil jurisdiction over a paternity claim where: (1) the mother, the child, and the alleged father were all members of Three Affiliated Tribes of the Fort Berthold Reservation; (2) the child lived with her mother on Fort Berthold Reservation at the time the paternity claim was filed; and (3) there was nothing in the record to contradict the alleged father's

assertion that the alleged paternity occurred on Fort Berthold Reservation. 392 N.W.2d at 402. Additionally, we concluded the mother's application for public assistance outside of the reservation boundaries and the father's occasional residences off the reservation were "insufficient to permit state court jurisdiction to hear and determine a claim between Indians for conduct on the reservation." *See id.*

[¶ 10] In *In re M.L.M.*, we held a state court lacked subject matter jurisdiction over a paternity claim where: (1) the mother, the children, and the alleged father were all members of the Turtle Mountain Band of Chippewa Indians; (2) the mother was employed on the Turtle Mountain Indian Reservation and intended to move there with the children; (3) the alleged father resided on the Turtle Mountain Indian Reservation at all times relevant to the paternity action; and (4) the uncontradicted testimony of the father was that the alleged conception took place on the Turtle Mountain Indian Reservation. *See* 529 N.W.2d at 185. Under these circumstances, we concluded the mother's residency off the reservation for several years and the alleged father's off-reservation employment were insufficient to overcome the danger that state court jurisdiction over the paternity action would pose to the tribe's right of self-government. *See id.* at 186.

[¶ 11] In *McKenzie County Social Service Bd. v. C.G.*, we held a trial court properly granted the defendant's motion to vacate a paternity judgment where: (1) the mother, the alleged father, and the child were all members of Three Affiliated Tribes of the Fort Berthold Reservation; (2) the mother and the alleged father lived on Fort Berthold Reservation at the time the child was conceived; and (3) conception took place on Fort Berthold Reservation. *See* 2001 ND 151, ¶¶ 2, 18, 633

N.W.2d 157. Additionally, we concluded the alleged father's residency off the reservation at the time the paternity suit was filed and his eight-year delay in raising subject matter jurisdiction as an issue did not validate the paternity judgment entered by the state court. *See id.* at ¶¶ 16, 18.

[¶ 12] Two common threads running through *McKenzie County Social Services Bd. v. V.G.*, *In re M.L.M.*, and *McKenzie County Social Service Bd. v. C.G.* are the mother, the alleged father, and the child were all members of the same Indian tribe and the conduct giving rise to the paternity action occurred on that tribe's reservation. "[T]he determination of the parentage of a child of Indian tribal members is intimately connected with the right of reservation Indians to make their own laws and be ruled by them." *McKenzie County Social Service Bd. v. C.G.*, 2001 ND 151, ¶ 15, 633 N.W.2d 157. Thus, in an action to determine the paternity of a child where the mother, child, and putative father are all members of the same tribe and the cause of action arose on that tribe's reservation, state court jurisdiction would undoubtedly infringe on the tribe's right to govern itself under the rationale of *Fisher*. *See* 424 U.S. at 387–89, 96 S.Ct. 943, 47 L.Ed.2d 106 (holding state court jurisdiction over an adoption proceeding infringed on a tribe's right to govern itself when all the parties involved were members of the same tribe and all the events giving rise to the adoption occurred on that tribe's reservation); *see also Jackson County ex rel. Jackson v. Swayney*, 319 N.C. 52, 352 S.E.2d 413, 419 (1987) ("State courts lack subject matter jurisdiction to determine paternity in the instant case where the child, mother and defendant are members of the Eastern Band of Cherokee Indians residing on the reservation."). The Office

of the Attorney General for the State of North Dakota issued an opinion on February 2, 2000, addressing the issue of whether state courts have jurisdiction over paternity actions where the mother, child and putative father are all enrolled tribal members. The opinion concluded that state courts may have jurisdiction depending on the residence of the parties and whether conception occurred on or off an Indian reservation. *See* N.D. Att'y Gen. Op.2000-07 (2000). "The Supreme Court of North Dakota has held that an Attorney General's opinion has the force and effect of law until a contrary ruling by a court. That court has further held that opinions of an Attorney General are 'entitled to respect,' and a court should follow them if 'they are persuasive.'" *N.D. Fair Housing Council, Inc. v. Peterson*, 2001 ND 81, ¶ 16, 625 N.W.2d 551 (citations omitted).

[¶ 13] In contrast to *McKenzie County Social Services Bd. v. V.G., In re M.L.M.,* and *McKenzie County Social Service Bd. v. C.G.,* the parties in this case are not members of the same Indian tribe. In this case, it is undisputed that at the time the paternity action was filed, Doe was a member of Three Affiliated Tribes of the Fort Berthold Reservation and was a legal resident of Fort Berthold Reservation, but was living off the reservation to attend college. Roe and the child, on the other hand, were legal residents of Standing Rock Sioux Reservation at the time the paternity action was filed on May 17, 1989. The record does not, however, indicate whether Roe or the child were members of Standing Rock Sioux Tribe at the time the paternity action was filed. Although it is undisputed that Roe is currently a member of Standing Rock Sioux Tribe, this fact is of little help in determining whether the state court lacked subject matter jurisdiction over the paternity action at the time it was filed in 1989. *See State ex rel. R.G. v. W.M.B.,* 159 Wis.2d 662, 465 N.W.2d 221,

224 (1990) ("Because W.M.B. is making a collateral attack on the underlying paternity judgment, tribal interests at stake in making an adjudication of paternity must be evaluated as of the date of the original action, which was commenced in July of 1977. If the state court had subject matter jurisdiction over this action in 1977, it was empowered to hear and determine the action."). Nonetheless, because Roe is currently a member of Standing Rock Sioux Tribe, she was at least eligible for membership in the Tribe at the time the paternity action was filed. *See* Standing Rock Sioux Tribe Code of Justice § 10-102.

[¶ 14] Standing Rock Sioux Tribe and Three Affiliated Tribes are each governed by their own legislative bodies, each tribe has its own set of substantive and procedural laws, each tribe has its own trial and appellate courts, and each tribe has its own reservation. *See* Standing Rock Sioux Tribe Code of Justice §§ 1-101, 1-201; Fort Berthold Tribal Code, Title 1, Ch. 1, Sections 2-3; *see also* B.J. Jones, *A Primer on Tribal Court Civil Practice,* n. 2, at http:// www.ndcourts.com/Court/Resource/Tribal.htm. In order to be a member of Standing Rock Sioux Tribe, an Indian must relinquish any membership rights he or she has in any other tribe. *See* Standing Rock Sioux Tribe Code of Justice § 10-106. Likewise, in order to be a member of Three Affiliated Tribes, an Indian must relinquish any membership rights he or she has in any other tribe. *See* Constitution and Bylaws of the Three Affiliated Tribes of the Fort Berthold Reservation art. II, § 2. Thus, Standing Rock Sioux Tribe and Three Affiliated Tribes each possess separate and distinct "attributes of sovereignty over both their members and their territory" of a "unique and limited character." *United States v. Wheeler,* 435 U.S. 313, 323, 98 S.Ct. 1079,

55 L.Ed.2d 303 (1978); *see also Duro v. Reina*, 495 U.S. 676, 695, 110 S.Ct. 2053, 109 L.Ed.2d 693 (1990) ("[T]ribes are not mere fungible groups of homogenous persons among whom any Indian would feel at home.... Petitioner's general status as an Indian says little about his consent to the exercise of authority over him by a particular tribe.");[1] *Washington v. Confederated Tribes of the Colville Reservation*, 447 U.S. 134, 161, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980) ("For most practical purposes [nonmember] Indians stand on the same footing as non-Indians resident on the reservation. There is no evidence that nonmembers have a say in tribal affairs or significantly share in tribal disbursements.");[2] *see also* Conference of Western Attorneys General, *American Indian Law Deskbook*, 155–56 (2d ed.1998) ("[N]onmember Indians are viewed no differently from non-Indians with respect to the extent of inherent tribal authority for both civil- and criminal-regulatory purposes."); *Strate v. A–1 Contractors*, 520 U.S. 438, 454, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997) (holding that a tribe's adjudicatory jurisdiction over nonmembers does not exceed its legislative jurisdiction over nonmembers). Therefore, we must necessarily consider the question of whether state court jurisdiction over the paternity action in this case infringed on Standing Rock Sioux Tribe's inherent right to govern itself separately from the question of whether state court jurisdiction infringed on Three Affiliated Tribes' inherent right to govern itself.

[¶ 15] Before resolving these two questions, however, we must also address a second factual distinction between the present case and *McKenzie County Social Services Bd. v. V.G., In re M.L.M.*, and *McKenzie County Social Service Bd. v. C.G.* In *McKenzie County Social Services Bd. v. V.G., In re M.L.M.*, and *McKenzie County Social Service Bd. v. C.G.*, it was undisputed that conception of the child occurred on the Indian reservation of the tribe of which all the parties were members. In contrast, in this case, nothing in the record indicates that Doe has ever entered the reservation of Roe's tribe, Standing Rock Sioux Reservation, or that Roe has ever entered the reservation of Doe's tribe, Fort Berthold Reservation. It is, however, undisputed that the child was born in Grand Forks, North Dakota, and that Roe and Doe lived together in Grand Forks, North Dakota, prior to the child's birth. Furthermore, it is undisputed that

---

1. In *Duro*, the Court held a tribe does not have criminal jurisdiction to prosecute nonmember Indians for crimes committed on the tribe's reservation. *See* 495 U.S. at 688, 110 S.Ct. 2053, 109 L.Ed.2d 693. Congress has now provided tribal courts criminal jurisdiction over nonmember Indians for crimes committed on the tribe's reservation. *See* Canby, *supra*, at 167 (citing 25 U.S.C. § 1301(2)). In citing to *Duro*, we do not imply that Standing Rock Sioux Tribal Court or Fort Berthold Tribal Court would be precluded from exercising jurisdiction over a paternity suit such as the one in this case, as that is not the issue before us. Thus, *Duro* is only cited for the distinction it drew between Indians who are not members of the same tribe. *See, e.g., Wacondo v. Concha*, 117 N.M. 530, 873 P.2d 276, 280 n. 3 (1994).

2. The Supreme Court has been criticized for focusing on tribal membership in resolving tribal sovereignty issues. *See, e.g.,* Allison M. Dussias, *Geographically–Based and Membership–Based Views of Indian Tribal Sovereignty: The Supreme Court's Changing Vision*, 55 U. Pitt. L.Rev. 1, 35 & 48 (1993). This criticism, however, has only been levied against cases in which the conduct of the nonmembers occurred within the geographical boundaries of a tribe's reservation. *See id.* Such criticism is inapplicable to this case, because nothing in the record indicates that Doe has ever entered the reservation of Roe's tribe, Standing Rock Sioux Reservation, or that Roe has ever entered the reservation of Doe's tribe, Fort Berthold Reservation.

Roe, Doe, and the child lived together in Grand Forks, North Dakota, after the child's birth until close to the time of the filing of the paternity action. Additionally, Roe alleged in her complaint the child was conceived in Grand Forks and stated in her answers to Doe's requests to admit, which were offered by Doe as defendant's exhibit 5 in support of his motion to vacate, that the child was conceived in Grand Forks. Nothing in the record indicates conclusively that any of the events giving rise to the paternity action occurred within the boundaries of an Indian reservation.

[¶ 16] Despite the parties' cohabitation in Grand Forks, North Dakota, Doe contends the trial court erred in finding that conception occurred in Grand Forks. Doe states in his affidavit that the actual place of conception is "unknown," and contends the trial court erred in finding conception occurred in Grand Forks because it based its finding, in part, on a letter submitted by Roe which was hearsay and lacked foundation.

[¶ 17] It is not necessary, however, for us to determine whether the trial court erred in finding conception occurred off either Indian reservation. The burden is on Doe in this case to show the paternity judgment is void as a matter of law. *See McKenzie County Social Service Bd. v. C.G.*, 2001 ND 151, ¶ 10, 633 N.W.2d 157 (stating that the question to be resolved in a Rule 60(b)(iv) motion is whether the judgment is void as a matter of law); *Zillmer*, 449 N.W.2d at 816 (stating that the burden is on the moving party in a N.D.R.Civ.P 60(b)(iv) motion to show sufficient grounds exist for disturbing the finality of a judgment). Therefore, if we assume the place of conception is unknown as Doe alleges, a resolution in favor of Doe would require us to hold, based on the undisputed facts of this case, that the 1989 paternity judgment is void as a matter of

law, regardless of whether conception occurred on or off the reservation. We reject such a proposition for reasons discussed later.

[¶ 18] We now turn to the issue of whether, as a matter of law, the 1989 paternity judgment is void because state court jurisdiction over the paternity action infringed on either Standing Rock Sioux Tribe's right to govern itself or Three Affiliated Tribes' right to govern itself. *See McKenzie County Social Service Bd. v. C.G.*, 2001 ND 151, ¶ 10, 633 N.W.2d 157 (stating that the question to be resolved in a Rule 60(b)(iv) motion is whether the judgment is void as a matter of law). In resolving this issue, we recognize that inherent tribal sovereignty rights are not the only interests at stake in this case. While an Indian tribe has a significant interest in determining the paternity of a child of one of its members, *see id.* at ¶ 15, the State also has an interest in determining a child's biological parents, *see* N.D. Att'y Gen. Op.2000–07 (2000) (The North Dakota Supreme Court has "noted the significant interest the state has in family issues and child welfare." (citation omitted)). This interest is significant where, as in this case, the child and the mother are receiving state and federal aid through an agency of the state and nearly all of the conduct leading up to the paternity action occurred in the State and off the Indian reservation. *See id.; cf.* Barbara Ann Atwood, *Fighting Over Indian Children: The Uses and Abuses of Jurisdictional Ambiguity*, 36 U.C.L.A. L.Rev. 1051, 1082 (1989) ("[T]he general precepts of federal Indian law suggest that tribes and states share significant authority over custody disputes involving Indian children. The doctrine of tribal sovereignty clearly supports tribal jurisdiction over most such disputes, except where the parties have essentially no contact with the reservation. State authority, arising from the state's

legitimate *parens patriae* role, likewise exists, except where the parties have essentially no contact outside the reservation."). With these State and Tribal interests in mind, we now consider the separate questions of whether state court jurisdiction over the 1989 paternity and support action infringed on Standing Rock Sioux Tribe's right to govern itself, and whether state court jurisdiction over the 1989 paternity and support action infringed on Three Affiliated Tribes' right to govern itself.

## A

■ [¶ 19] The question in regard to Standing Rock Sioux Tribe's right to govern itself is, whether as a matter of law, state court jurisdiction over an action brought to establish the paternity of a child who is an Indian and resides on Standing Rock Sioux Reservation infringes on the Tribe's right to govern itself when the action is brought by an Indian who is eligible for membership in Standing Rock Sioux Tribe, and who resides on the Reservation against a member of a different Indian tribe who is a resident of that tribe's reservation, but is living off the reservation. The United States Supreme Court "repeatedly has approved the exercise of jurisdiction by state courts over claims by Indians against non-Indians, even when those claims arose in Indian country." *See Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Engineering, P.C.*, 467 U.S. 138, 148 & n. 7, 104 S.Ct. 2267, 81 L.Ed.2d 113 (1984) [Three Tribes I].

The interests implicated in such cases are very different from those present in *Williams v. Lee*, where a non-Indian sued an Indian in state court for debts incurred in Indian country, or in *Fisher v. District Court*, where this Court held that a tribal court had exclusive jurisdiction over an adoption proceeding in which all parties were tribal Indians residing on a reservation. *As a general matter, tribal self-government is not impeded when a State allows an Indian to enter its courts on equal terms with other persons to seek relief against a non-Indian concerning a claim arising in Indian country.*

*Three Tribes I*, at 148–49, 104 S.Ct. 2267, 81 L.Ed.2d 113 (emphasis added); *accord* William C. Canby, Jr., *American Indian Law*, 177 (1998) ("One might be tempted to conclude from *Williams [v. Lee]* that the state is precluded from taking jurisdiction over claims by tribal members against non-Indians, when the claims arise in Indian country. That conclusion would be incorrect; the Supreme Court has said nothing in *Williams v. Lee* prevents the maintenance of such actions in state court and they have traditionally been brought there."). Although the Court in *Three Tribes I* stated "[t]he exercise of state jurisdiction is particularly compatible with tribal autonomy when, as here, the suit is brought by the tribe itself and the tribal court lacked jurisdiction over the claim at the time the suit was instituted," *see Three Tribes I*, at 149, 104 S.Ct. 2267, 81 L.Ed.2d 113 nothing in the opinion indicates it intended to limit the general rule of allowing state court jurisdiction over claims brought by an Indian against a non-Indian to only those cases in which the tribe was the plaintiff and the tribal court lacked jurisdiction over the claim at the time the suit was instituted, *see id.* at 148–49, 104 S.Ct. 2267, 81 L.Ed.2d 113. *See also Zaman* 946 P.2d at 461–62 (concluding that the application of *Three Tribes I* is not limited to actions in which the tribe itself is the plaintiff). Furthermore, none of the cases cited by the United States Supreme Court as illustrations of its approval of state court jurisdiction over claims by Indians against non-Indians involved cases in which the tribe was

a plaintiff or cases in which it was apparent that a tribal court lacked jurisdiction over the claim. *See id.* at 148 & n. 7, 104 S.Ct. 2267, 81 L.Ed.2d 113 (citing *McClanahan v. Arizona State Tax Comm'n,* 411 U.S. at 173, 93 S.Ct. 1257, 36 L.Ed.2d 129 (dictum); *Poafpybitty v. Skelly Oil Co.,* 390 U.S. 365, 88 S.Ct. 982, 19 L.Ed.2d 1238 (1968); *Williams v. Lee,* 358 U.S. at 219, 79 S.Ct. 269, 3 L.Ed.2d 251 (dictum); *United States v. Candelaria,* 271 U.S. 432, 444, 46 S.Ct. 561, 70 L.Ed. 1023 (1926); *Felix v. Patrick,* 145 U.S. 317, 332, 12 S.Ct. 862, 36 L.Ed. 719 (1892); *Fellows v. Blacksmith,* 19 How. 366, 15 L.Ed. 684 (1856); *McCrea v. Busch,* 164 Mont. 442, 524 P.2d 781 (1974); *Paiz v. Hughes,* 76 N.M. 562, 417 P.2d 51 (1966); *Whiting v. Hoffine,* 294 N.W.2d 921, 923–24 (S.D. 1980)).

[¶ 20] In *Zaman,* the Supreme Court of Arizona relied on *Three Tribes I* to conclude state court jurisdiction over a paternity claim brought by a member of the Navajo Tribe against a non-Indian did not infringe on the Navajo Tribe's right to govern itself. *See Zaman,* 946 P.2d at 461–62 (citing *Three Tribes I* ). The court observed that under *Three Tribes I,* the infringement test is not to be used as an offensive tool against Indians, but only to protect Indians. *See id.* at 461. Thus, the court reasoned:

> State court jurisdiction over actions brought by Indians against non-Indians does not infringe upon the rights of Indians to make their own laws and to be ruled by them. But Indian rights would be infringed if we permitted a non-Indian to challenge an Indian's choice of the state forum. Members of tribes are citizens of the United States and of the state in which they reside and thus have the right to bring actions in state court. This right would be substantially hin-

dered if non-Indians could prevent Indians from seeking redress in state court. *Id.* at 462.

[¶ 21] In contrast to the defendants in *Three Tribes I* and *Zaman,* Doe is an Indian. However, Doe is not member of Standing Rock Sioux Tribe. Therefore, with respect to Standing Rock Sioux Tribe's right of self-government, Doe stands "on the same footing as non-Indians." *See Confederated Tribes,* 447 U.S. at 161, 100 S.Ct. 2069, 65 L.Ed.2d 10. Thus, just as the defendants in *Three Tribes I* and *Zaman* were not permitted to assert the plaintiffs' tribes' rights of self-government against the plaintiffs in those cases, Doe is not permitted to assert Standing Rock Sioux Tribe's right of self-government against its own member, Roe, in this case. *See Three Tribes I,* 476 U.S. at 148–49, 104 S.Ct. 2267, 81 L.Ed.2d 113; *Zaman,* 946 P.2d at 462; *Wacondo v. Concha,* 117 N.M. 530, 873 P.2d 276, 280 (1994) ("[N]either federal law nor tribal sovereignty precludes Indian plaintiffs from pursuing their state remedies against a nonmember Indian in state court."); *American Indian Law Deskbook, supra,* at 156 ("Whenever a tribe or a tribal member seeks to assert a reservation-based claim against a nonmember, exercise of state adjudicatory jurisdiction is permissible."); *see also In re Otter Tail Power Co.,* 451 N.W.2d 95, 98 (N.D.1990) (holding a public utility lacked standing to assert an Indian tribe's sovereign rights of self-government).

[¶ 22] The court in *Zaman* held state court jurisdiction over a paternity action brought by a member of a tribe against a non-Indian did not infringe on the tribe's right to self-government even when the events leading up to the paternity action occurred on the tribe's reservation. *See Zaman,* 946 P.2d at 460; *but see In re Marriage of Skillen,* 1998 MT 43, 287

Mont. 399, 956 P.2d 1 (holding in a child custody proceeding where at least one parent is Indian and living with an Indian child on the reservation, the tribal court has exclusive jurisdiction). We do not need to reach such a holding in this case. As discussed earlier, all of the events surrounding the relationship of Doe and Roe occurred outside the boundaries of any Indian reservation, and Doe alleges the place of conception is unknown. Doe does not allege he and Roe had sexual intercourse on either reservation at anytime. Under such circumstances, the existence of any tribal court jurisdiction, much less exclusive tribal court jurisdiction, is questionable. *See*, Canby, *supra*, at 194–95 ("When the tribe or its member sues a nonmember for a claim arising outside of Indian country, tribal jurisdiction is more doubtful."). As the Court of Appeals for the Eighth Circuit explained:

> [A]bsent express authorization by federal statute or treaty, tribal jurisdiction over the conduct of nonmembers exists only in limited circumstances. Indian tribes do, however, retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations. The operative phrase is "on their reservations." "Neither *Montana* nor its progeny purports to allow Indian tribes to exercise civil jurisdiction over the activities or conduct of non-Indians occurring outside their reservations."

*Hornell Brewing Co. v. The Rosebud Sioux Tribal Court*, 133 F.3d 1087, 1091 (8th Cir.1998) (citations, footnote and internal quotation marks omitted). Nonetheless, the issue before this Court is not whether Standing Rock Sioux Tribal Court or Fort Berthold Tribal Court has subject matter jurisdiction over the paternity action brought in this case, but merely whether it has exclusive jurisdiction, thereby depriving the state court of concurrent jurisdiction. *Compare id. with Fisher*, 424 U.S. at 387–89, 96 S.Ct. 943, 47 L.Ed.2d 106 (concluding a tribal court had exclusive jurisdiction) *and Confederated Tribes*, 447 U.S. at 154, 161, 100 S.Ct. 2069, 65 L.Ed.2d 10 (concluding that a state and a tribe had jurisdiction to tax on-reservation sales of cigarettes to Indians residing on the reservation but not enrolled in the tribe).

■ [¶ 23] We also do not need to hold in this case, as the court in *Zaman* did, that state court jurisdiction over a paternity action brought by a member of a tribe against a non-Indian does not infringe on the tribe's right to self-government even when the child is eligible for membership in the tribe of the reservation on which he or she resides. *See Zaman*, 946 P.2d at 460. We recognize that "Indian tribes retain their inherent power to determine tribal membership, to regulate domestic relations among members, and to prescribe rules of inheritance for members." *See Montana*, 450 U.S. at 564, 101 S.Ct. 1245, 67 L.Ed.2d 493. However, in this case Roe and Doe are not members of the same tribe, nothing in the record established either has entered the other's reservation, and nothing in the record established whether the child is a member of Standing Rock Sioux Tribe or even eligible for membership in the Tribe. *See* Standing Rock Sioux Tribe Code of Justice § 10–102 ("[T]o be eligible for enrollment as a member of the Tribe, an applicant must possess one-fourth (¼) degree or more of Standing Rock Sioux Indian blood and must have one parent who is a lawfully enrolled member of the Tribe...."). Under such circumstances and on the state of the record in this case, we cannot say, as a matter of law, that the exercise of state court jurisdiction over the 1989 paternity action infringed on Standing Rock Sioux Tribe's inherent right to determine its

tribal membership. *See Harris v. Young,* 473 N.W.2d 141, 142 n. 1, 145 (S.D.1991) (finding concurrent state court jurisdiction over a change of custody motion brought by a non-Indian against a tribal member where it was unknown if the child was eligible for membership in the tribe). Although not applicable to paternity actions, we note that Congress also requires a showing that a child is eligible for membership in a tribe before that tribe's court will have exclusive jurisdiction under the Indian Child Welfare Act. *See* 25 U.S.C. § 1903(4) (" 'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.").

[¶ 24] We, therefore, hold that Doe has not shown, as a matter of law, that the exercise of state court jurisdiction over an action brought to establish the paternity of a child who is an Indian and resides on Standing Rock Sioux Reservation infringes on the Tribe's right to govern itself when the action is brought by an Indian eligible for membership in Standing Rock Sioux Tribe, who resides on the reservation · of that tribe, against a member of Three Affiliated Tribes, who is a legal resident of that tribe's reservation.

[¶ 25] In reaching this holding, we do not imply that *Byzewski v. Byzewski,* 429 N.W.2d 394 (N.D.1988) is no longer good law. In *Byzewski,* we held a tribal court has exclusive jurisdiction to issue support and custody orders in a divorce action brought by a member and resident of Standing Rock Sioux Tribe against her non-Indian husband. *See Byzewski,* at 401. The statuses of the litigants in *Byzewski,* were essentially identical to the statuses of Roe and Doe in regard to Standing Rock Sioux Tribe's right to govern itself. However, *Byzewski* is distin-

guishable from this case on three key bases. First, in *Byzewski,* we noted that the non-Indian husband lived on Standing Rock Sioux Reservation with the wife and · "[a]ll incidents giving rise .to the custody and support issues in this action for dissolution of the second marriage occurred on the reservation." *See id.* at 395, 400. Second, it was the wife, a member of the Tribe, who chose to· file the action in Standing Rock Sioux Tribal Court and who asserted state court jurisdiction over the action infringed on Standing Rock Sioux Tribe's right to govern itself. *See id.* at 395–96. Third, central to our holding in *Byzewski* was the fact that the state court asserted its jurisdiction after the tribal court had already issued temporary custody and support orders. *See id.* at 397 ("[W]e conclude that, under the circumstances of this case, in particular, because first-in-time temporary orders were issued by the tribal court and because the custodial domicile was the reservation, *Williams v. Lee* is applicable and that the exercise of jurisdiction by the state court interferes with the sovereignty of the Tribe."). None of these three bases are even remotely present in the case at hand.

**B**

■ · [¶ 26] The question in regard to Three Affiliated Tribes' right to govern itself is whether, as a matter of law, state court jurisdiction over an action brought to establish the paternity of a child who is an Indian and resides off Fort Berthold Reservation infringes on the Tribe's right to govern itself when the action is brought against a member of Three Affiliated Tribes, who is a resident of the reservation of that tribe by an Indian eligible for membership in a different Indian tribe, who is a resident of that tribe's reservation. As discussed earlier, a tribal court has exclusive civil jurisdiction over claims in which a non-Indian asserts.a claim against an Indi-

an for conduct occurring on that Indian's reservation, *see Williams*, 358 U.S. at 223, 79 S.Ct. 269, 3 L.Ed.2d 251 claims in which all the parties are members of the same Indian tribe and the claim involves conduct occurring on that tribe's reservation, *see Fisher*, 424 U.S. at 387–89, 96 S.Ct. 943, 47 L.Ed.2d 106 wholly internal tribal subject matter, such as membership disputes, divorce actions between members domiciled on the reservation, and certain probate actions, *see* Canby, *supra*, at 187, 198–99, 202, and certain child custody proceedings falling under the Indian Child Welfare Act [ICWA], *see* 25 U.S.C. § 1911(a). Additionally, an Indian tribe has exclusive criminal jurisdiction over crimes committed by Indians against Indians in Indian country unless such crimes fall within the Major Crimes Act of 18 U.S.C. § 1153. *See* Canby, *supra*, at 159. However, "[o]utside of Indian country, the state has general criminal jurisdiction over all persons, including Indians." *See id.* at 165.

[¶ 27] This case does not present the exclusive tribal court jurisdiction scenario of *Fisher* because it does not involve a claim between members of the same tribe for conduct that occurred on that tribe's reservation. *See* 424 U.S. at 387–89, 96 S.Ct. 943, 47 L.Ed.2d 106. This case does present a scenario somewhat similar to that of *Williams v. Lee*, because, in addressing Three Affiliated Tribes' right to self-government, Roe, as a nonmember of Three Affiliated Tribes, is viewed as a non-Indian, *see Confederated Tribes*, 447 U.S. at 161, 100 S.Ct. 2069, 65 L.Ed.2d 10 who brought a claim against Doe, a member of Three Affiliated Tribes and resident of the Fort Berthold Reservation. However, one key element of the *Williams v. Lee* analysis is missing: Doe has not shown that any of the conduct giving rise to the paternity action occurred on Fort Berthold Reservation. *See Williams*, 358 U.S. at 223, 79 S.Ct. 269, 3 L.Ed.2d 251 ("It is immaterial

that respondent [, the plaintiff,] is not an Indian. He was on the Reservation and the transaction with an Indian took place there."). In this case, nothing in the record indicates, and Doe has never alleged, that the conception of the child or any other events surrounding his relationship with Roe took place within the boundaries of Fort Berthold Reservation. In fact, nothing in the record indicates that Roe, the plaintiff, has even stepped foot on Fort Berthold Reservation.

[¶ 28] In general, tribal courts do not have exclusive jurisdiction over claims against tribal member defendants that arise outside of the reservation. *See* Canby, *supra*, at 180; *see also* Jones, *supra*, § I(b) ("[I]n general a tribal court can only exercise jurisdiction over a dispute that arises within its territory."). "Absent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to nondiscriminatory state law otherwise applicable to all citizens of the State." *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 148–49, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973); *accord John v. Baker*, 982 P.2d 738, 759 (Alaska 1999) ("Outside Indian country, all disputes arising within the State of Alaska, whether tribal or not, are within the state's general jurisdiction. Thus the state, as well as the tribe, can adjudicate such disputes in its courts." (footnote omitted)). Therefore, states have consistently assumed jurisdiction over claims brought by non-Indians against tribal members for conduct arising outside the territorial boundaries of Indian reservations. *See, e.g. John*, 982 P.2d at 759 (recognizing concurrent state court jurisdiction over child custody proceedings between tribal members that arise outside of Indian country); *Odenwalt v. Zaring*, 102 Idaho 1, 624 P.2d 383, 385–86 (1980) (holding state court jurisdiction over a tort action

brought by a non-Indian against an association composed entirely of tribal members did not infringe on the tribe's right to govern itself where the action arose off the reservation); *North Pacific Ins. Co. v. Switzler*, 143 Or.App. 223, 924 P.2d 839, 845–46 (1996) (holding state court jurisdiction over an action for declaratory relief did not infringe on a tribe's right to govern itself where "[u]nlike in *Fisher*, not all of the parties to this action are Warm Springs [Tribal] members, and unlike in *Williams*, the action did not arise on the reservation"); *Maxa v. Yakima Petroleum, Inc.*, 83 Wash.App. 763, 924 P.2d 372, 374–75 (1996) (holding a state court had concurrent jurisdiction over a contract dispute not clearly arising either on or off a reservation); *see also DeCoteau v. District Court*, 420 U.S. 425, 429, 95 S.Ct. 1082, 43 L.Ed.2d 300 (1975) (affirming state court jurisdiction over a neglect and dependency proceeding in a pre-ICWA case involving a mother and children who were all tribal members where it was determined that the action arose off the reservation); *State ex rel. Vega v. Medina*, 549 N.W.2d 507, 510 (Iowa 1996) (listing the fact that conception occurred off the reservation as a factor weighing in favor of state court jurisdiction over a paternity action).

[¶ 29] Similar to the above cited cases, the undisputed facts of this case are Doe left Fort Berthold Reservation and engaged in a relationship with Roe, a non-member of Doe's tribe, outside the boundaries of Fort Berthold Reservation. Nothing in the record indicates any part of Roe and Doe's relationship occurred within Fort Berthold Reservation. Although Doe contends the place of conception of the child is unknown, this allegation is insufficient to meet Doe's burden of showing that the 1989 judgment of support and paternity is void as a matter of law. *See McKenzie County Social Service Bd. v. C.G.*, 2001 ND 151, ¶ 10, 633 N.W.2d 157 (stating that the question to be resolved in a Rule 60(b)(iv) motion is whether the judgment is void as a matter of law); *Zillmer*, 449 N.W.2d at 816 (stating that the burden is on the moving party in a N.D.R.Civ.P 60(b)(iv) motion to show sufficient grounds exist for disturbing the finality of a judgment). As we discussed earlier, because we must decide whether the 1989 judgment is void as a matter of law, even assuming the place of conception is unknown as Doe alleges, a resolution in favor of Doe would require us to hold, based on the undisputed facts of this case, that the 1989 paternity judgment is void, regardless of whether conception occurred on or off the reservation. This we decline to do.

[¶ 30] Where, as here, a paternity action is brought by a nonmember of Three Affiliated Tribes and a non-resident of Fort Berthold Reservation against a member of Three Affiliated Tribes whose legal residency is Fort Berthold Reservation, and the record indicates that all the events leading up to the action occurred off Fort Berthold Reservation and the place of conception is unknown, we cannot say, as a matter of law, that state court jurisdiction over the action infringed on Three Affiliated Tribes' right of self-government. *See John*, 982 P.2d at 759 ("Outside Indian country, all disputes arising within the State of Alaska, whether tribal or not, are within the state's general jurisdiction. Thus the state, as well as the tribe, can adjudicate such disputes in its courts."). While Three Affiliated Tribes may have had jurisdiction over the paternity action in 1989, Doe has not met his burden of showing that, as a matter of law, the Tribe had exclusive jurisdiction. *See Mescalero Apache Tribe*, 411 U.S. at 148–49, 93 S.Ct. 1267, 36 L.Ed.2d 114 ("Absent express federal law to the contrary, Indians going beyond reservation boundaries have gener-

ally been held subject to nondiscriminatory state law otherwise applicable to all citizens of the State."); *see also* Atwood, *supra*, at 1081 ("[W]ith respect to claims that have significant off-reservation impact or occur off-reservation, state courts may assert jurisdiction, concurrent with tribal courts, even as to actions involving Indian defendants. In such a situation, the state's interest in hearing the dispute is not automatically overshadowed by tribal sovereignty.").

[¶ 31] In reaching this holding, we recognize that, like Standing Rock Sioux Tribe, Three Affiliated Tribes retains "inherent power to determine tribal membership, to regulate domestic relations among members, and to prescribe rules of inheritance for members." *See Montana*, 450 U.S. at 564, 101 S.Ct. 1245, 67 L.Ed.2d 493. However, in this case Roe and Doe are members of two different Indian tribes, nothing in the record established either has entered the other's reservation, and nothing in the record established whether the child is a member of Three Affiliated Tribes or even eligible for membership in the Tribe. *See* Constitution and Bylaws of the Three Affiliated Tribes of the Fort Berthold Reservation art. II, § 1(c) (providing that to be eligible for enrollment a person must have "¼ degree Indian blood of a federally recognized tribe provided at least⅛ Indian blood be of the Gros Ventre, Mandan and/or Arickara

Tribes"). Under such circumstances and on the state of the record in this case, we cannot say, as a matter of law, that the exercise of state court jurisdiction over the 1989 paternity action infringed on Three Affiliated Tribes' inherent right to determine its tribal membership. *See Harris*, 473 N.W.2d at 142 n. 1, 145 (finding concurrent state court jurisdiction over a change of custody motion brought by a non-Indian against a tribal member where it was unknown if the child was eligible for membership in the tribe); *see also* 25 U.S.C. § 1903(4) (" 'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.").

[¶ 32] We, therefore, hold that Doe has failed to show the 1989 paternity judgment is void as a matter of law. We affirm the trial court's order.

[¶ 33] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.