873 P.2d 276

**Maureen WACONDO and Betty Salas, Personal Representative of the Estate of Gary Salas, Plaintiffs–Appellants,**

v.

**John Dominic CONCHA, Defendant–Appellee.**

**No. 14200.**

Court of Appeals of New Mexico.

March 11, 1994.

**531**

Sarah W. Barlow, Scott E. Borg, Daniel M. Rosenfelt, Rosenfelt, Barlow, Barber & Borg, P.A., Albuquerque, for plaintiffs-appellants.

Kim Knowles, Mary Lou Carson, Indian Pueblo Legal Services, San Juan Pueblo, for defendant-appellee.

David R. Yepa, Ann Berkley Rodgers, Albuquerque, for amicus curiae, Pueblo of Jemez.

Lester K. Taylor, Teresa Isabel Leger, Albuquerque, for amici curiae, Pueblos of Laguna and Santa Ana, and Jicarilla Apache Tribe.

L. Lamar Parrish, Albuquerque, for amici curiae, Pueblos of Sandia, Isleta, San Juan, and San Felipe.

## OPINION

BLACK, Judge.

Defendant Concha is a member of the Taos Pueblo. Plaintiff Salas is a member of the Zia Pueblo who resides in Rio Rancho. Plaintiff Wacondo is a member and resident of the Jemez Pueblo. Plaintiffs' claims arise out of a shooting committed within the exterior boundaries of the Jemez Pueblo. As a result of the shooting, Defendant was convicted in federal court of voluntary manslaughter and assault.

Plaintiffs filed a complaint for personal injuries seeking compensatory and punitive damages for the wrongful death and injuries they suffered as a result of Defendant's ac-

tions. Defendant moved to dismiss the complaint for lack of jurisdiction, claiming that the matter fell within the exclusive jurisdiction of the Jemez Pueblo. The Sandoval County District Court granted the motion and dismissed the case, since "all of the parties are Indians and the causes of action arose on Indian lands."

Plaintiffs appeal, arguing that they have the right to seek redress against another Indian, not a member of the Jemez Pueblo, in state court. The issue is whether Indian sovereignty or federal policy would require the state courts to recognize exclusive jurisdiction in the Jemez courts because all of the parties are Indian, even though not members of the Jemez Pueblo.[1] Under these facts, we agree with Plaintiffs and reverse.

## I. STATE JURISDICTION

As a general rule, Indians may sue non-Indians in state court. *Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Eng'g, P.C.*, 467 U.S. 138, 148–49, 104 S.Ct. 2267, 2274–75, 81 L.Ed.2d 113 (1984). This general rule holds true even though some or all of the transaction at issue occurred on an Indian reservation. *Foster v. Luce*, 115 N.M. 331, 333, 850 P.2d 1034, 1036 (Ct.App.1993); *see also* Margery H. Brown & Brenda C. Desmond, *Montana Tribal Courts: Influencing the Development of Contemporary Indian Law*, 52 Mont.L.Rev. 211, 265 (1991) ("In contrast to the rule applicable to lawsuits brought by non-Indians against Indians in reservation-based claims, the rules applicable to reservation-based claims brought by Indians permit the filing of those claims in either state or tribal court.") (footnote omitted). The New Mexico Supreme Court has specifically held that an Indian may invoke the jurisdiction of a state court to protect his rights to recover for personal injuries arising from an accident on Indian land. *Paiz v. Hughes*, 76 N.M.

---

1. The parties filed conflicting affidavits regarding whether the Jemez Pueblo courts would entertain a civil claim against a nonmember. Since the district court expressly refused to consider such evidence, we decline to consider it on appeal. *See* SCRA 1986, 1–012 (Repl.1992); *cf. Rekart v. Safeway Stores, Inc.*, 81 N.M. 491, 493–94, 468 P.2d 892, 894–95 (Ct.App.1970) (discussing difference between motion to dismiss and motion for summary judgment).

562, 564–65, 417 P.2d 51, 52 (1966).[2] On the other hand, disputes which involve only tribal members or internal tribal policy must generally be maintained in tribal forums. *See Fisher v. District Court,* 424 U.S. 382, 389, 96 S.Ct. 943, 947, 47 L.Ed.2d 106 (1976). In sum: "In matters not affecting either the Federal Government or the tribal relations, an Indian has the same status to sue and be sued in state courts as any other citizen." Felix Cohen, *Handbook of Federal Indian Law* ch. 19, § 5, at 379 (1942 ed.); *Paiz,* 76 N.M. at 566, 417 P.2d at 53.

## II. *FEDERAL POLICY*

Defendant relies upon Public Law No. 83–280, 67 Stat. 588 (1953) (codified in part at 28 U.S.C. § 1360) ("Public Law 280"), to argue that New Mexico lacks jurisdiction over any dispute involving Indians on reservation land. Public Law 280 delegated to certain designated states jurisdiction over reservation activities of both members and nonmembers and provides that state criminal and civil prohibitory laws "that are of general application" shall also be in effect on Indian reservations. Other states were given the option to accept such jurisdiction. New Mexico, one of the states given the option to accept such jurisdiction, has not done so. On its face, then, Public Law 280 would seem relevant only if the New Mexico courts were seeking to supplant the jurisdiction of the Jemez court.

In considering whether a federal statute preempts state jurisdiction, it is necessary to consider the goals and purposes of the federal legislation. *Silkwood v. Kerr-McGee Corp.,* 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984). In matters affecting Indian-state relations it also depends on the nature of the particular interests. *Foundation Reserve Ins. Co. v. Garcia,* 105 N.M. 514, 515, 734 P.2d 754, 755

(1987); William C. Canby, Jr., *The Status of Indian Tribes in American Law Today,* 62 Wash.L.Rev. 1, 7 (1987). The primary concern of Congress in enacting Public Law 280 was to provide a state forum for resolving legal disputes between reservation Indians and other private citizens. *Bryan v. Itasca County,* 426 U.S. 373, 383, 96 S.Ct. 2102, 2108, 48 L.Ed.2d 710 (1976). Public Law 280 was intended as an expansion of state jurisdictions for disputes involving reservation Indians and not as a prohibition on exercising jurisdiction the state would otherwise possess. *South Naknek v. Bristol Bay Borough,* 466 F.Supp. 870, 879 (D.Alaska 1979). It is therefore difficult to determine how providing a state forum for tribal members who wish to sue a nonmember Indian conflicts with the goals or purposes of Public Law 280.

Defendant next argues that the Indian Civil Rights Act, 25 U.S.C. §§ 1301–1341 (1968), and the Indian Self-Determination Act, 25 U.S.C. §§ 450–450n (1975), express a federal policy in favor of furthering self-government. Initially, we note the Indian Self-Determination Act defines Indian in reference to tribal membership, 25 U.S.C. § 450b(a), and the Indian Civil Rights Act has been found not to preempt state court jurisdiction of a suit for negligence and breach of contract brought by a tribe against a non-Indian in state court, *Three Affiliated Tribes of the Fort Berthold Reservation,* 467 U.S. at 150–51, 104 S.Ct. at 2275–76. More generally, however, we do not question the existence of a federal policy encouraging the development of tribal self-government or its embodiment in either of those statutes. Why application of such a policy requires exclusive tribal jurisdiction in the present context, however, is more difficult to fathom. Here, a Taos Pueblo Indian claims exclusive jurisdiction for the Jemez courts because the shooting occurred in the Jemez Pueblo. Since Defendant is not a Jemez member, however,

---

**2.** Indeed, it has even been suggested that restricting the access of Indians to state courts may run afoul of the Fourteenth Amendment and the contemporaneous legislation passed to implement it. *Three Affiliated Tribes of the Fort Berthold Reservation,* 467 U.S. at 152 n. 12, 104 S.Ct. 2276 n. 12; *cf.* Richard E. Ransom & William G. Gilstrap, *Indians—Civil Jurisdiction in New Mexico—State, Federal and Tribal Courts,* 1

N.M.L.Rev. 196, 209–10 n. 56 (1971) (discussing an unreported Bernalillo County case where this argument was raised but not decided). Others reject this argument on the assumption Indians "are not 'subject to the jurisdiction of the United States' in the constitutional sense." David C. Williams, *The Borders of the Equal Protection Clause: Indians as Peoples,* 38 UCLA L.Rev. 759, 860 (1991).

the interests of the Jemez Pueblo would appear to favor providing a choice of courts to Plaintiff Wacondo, who is a Jemez member.

If tribal court jurisdiction over nonmembers and non-Indians was exclusive, tribes would lose the right to stipulate with such outsiders that disputes could be arbitrated or adjudicated in a state forum. Tribal courts alone could then decide cases such as breach of contract and negligence. If this were the law, not only might there be a chilling effect on doing business with Indian tribes, but also, on some reservations, there would be no available forum to resolve disputes. Rather than strengthen sovereignty, this would create a great disincentive to non-Indians interested in reservation business.

In addition, a judicially imposed monopoly would not necessarily tend to improve the administration of tribal court systems in furtherance of the acknowledged federal policy. The availability of concurrent jurisdiction could arguably have a positive influence on the tribal courts. The existence of such a positive influence is particularly likely in New Mexico where the state and tribal judges interact frequently on matters affecting the administration of justice. *See, e.g.,* NMSA 1978, § 32A–6–21 (Repl.Pamp.1993) (provision for state court recognition of tribal court involuntary placement orders).

Amici would advance the New Mexico Enabling Act, Pub.L. No. 61–310, 36 Stat. 557 (1910), as another basis for preemption. However, amici take the issues in the case as they find them, *St. Vincent Hospital v. Salazar,* 95 N.M. 147, 149, 619 P.2d 823, 825 (1980), and the parties did not raise the Enabling Act. In any event, it is clear that the purpose of the limiting language in the New Mexico Enabling Act was not to deny Indians equal access to state courts. *Jicarilla Apache Tribe v. United States,* 601 F.2d 1116, 1133 (10th Cir.), *cert. denied,* 444 U.S. 995, 100 S.Ct. 530, 62 L.Ed.2d 426 (1979); *State Sec., Inc. v. Anderson,* 84 N.M. 629, 630, 506 P.2d 786, 787 (1973).

## III. *TRIBAL SOVEREIGNTY*

Our Supreme Court considered the types of situations in which exclusive tribal court jurisdiction would be appropriate in *Foundation Reserve Insurance Co.:*

> Exclusive tribal jurisdiction exists where an action involves a proprietary interest in Indian land; or when an Indian sues another Indian on a claim for relief recognized only by tribal custom and law; or when an Indian is being sued by a non-Indian over an occurrence or transaction arising in Indian country.

105 N.M. at 516, 734 P.2d at 756 (citations omitted). The facts of the present case do not fit within any of these categories. *See also State Sec., Inc.,* 84 N.M. at 631, 506 P.2d at 788 (powers not reserved to Indians for their exclusive jurisdiction include suits by Indians against outsiders).

■ Defendant argues that allowing Plaintiffs to bring this suit in state court would infringe on the right of reservation Indians to make their own laws and be governed by them. *See Williams v. Lee,* 358 U.S. 217, 220, 79 S.Ct. 269, 271, 3 L.Ed.2d 251 (1959). We note that this Court and our Supreme Court have found it useful to consider three specific factors in determining whether the exercise of state court jurisdiction would infringe upon the right of a tribe to make its own laws and be governed by them. *See Foundation Reserve Ins. Co.,* 105 N.M. at 515, 734 P.2d at 755; *Chino v. Chino,* 90 N.M. 203, 206, 561 P.2d 476, 479 (1977); *Hartley v. Baca,* 97 N.M. 441, 443, 640 P.2d 941, 943 (Ct.App.1981), *cert. quashed,* 98 N.M. 51, 644 P.2d 1040 (1982). These factors are: "(1) whether the parties are Indians or non-Indians; (2) whether the cause of action arose within the Indian reservation; and (3) what is the nature of the interest to be protected." *Foundation Reserve Ins. Co.,* 105 N.M. at 515, 734 P.2d at 755.

■ As to the first factor, while all the parties in the present case are Indians, both Defendant Concha and Plaintiff Salas are part of an increasingly problematic group in regards to tribal jurisdiction: nonmember Indians. *See* Frank Pommersheim, *The Crucible of Sovereignty: Analyzing Issues of Tribal Jurisdiction,* 31 Ariz.L.Rev. 329, 355 (1989) (the answer to which governing body has the jurisdiction over nonmember Indians and for what purposes "portends new devel-

opments on the ever-changing frontier of Indian jurisdiction"). As to the second factor, there is no question that the cause of action arose in the Jemez Pueblo. The third factor, however, is the critical one to the analysis of the present case. Defendant has failed to show how recognizing concurrent jurisdiction in tribal and state courts would impinge upon tribal sovereignty in the present context.

The facts here compel the conclusion that the "nonmember" Defendant cannot require Plaintiffs to forego their option of seeking redress in state district court. Nothing in our decision implies the Jemez Pueblo is in any way limited in providing a forum or remedies in this dispute. Our holding is merely that neither federal law nor tribal sovereignty precludes Indian plaintiffs from pursuing their state remedies against a nonmember Indian in state court.

Although the holding does not directly apply because our case does not deny or limit tribal jurisdiction, we find the language used by the United States Supreme Court in *Duro v. Reina*, 495 U.S. 676, 110 S.Ct. 2053, 109 L.Ed.2d 693 (1990),[3] to discuss tribal authority over nonmembers apropos in this context as well:

> [T]ribes are not mere fungible groups of homogenous persons among whom any Indian would feel at home. On the contrary, wide variations in customs, art, language, and physical characteristics separate the tribes, and their history has been marked by both intertribal alliances and animosities. Petitioner's general status as an Indian says little about his consent to the exercise of authority over him by a particular tribe.

*Id.* at 695, 110 S.Ct. at 2065 (citations omitted).

### IV. CONCLUSION

We do not believe state courts' concurrent jurisdiction over torts committed within the boundaries of one pueblo by a member of another pueblo is preempted by federal law.

Nor do we find that the provision of a state remedy, in this limited context, will in any way inhibit the right of reservation Indians to make their own laws and be governed by them. For these reasons, we must reverse the district court with instructions that Plaintiffs' complaint be reinstated to the docket.

IT IS SO ORDERED.

DONNELLY and ALARID, JJ., concur.

---

**3.** It is true in response to *Duro* Congress promptly amended the Indian Civil Rights Act to restore tribal criminal jurisdiction over nonmembers. *See* Pub.L. No. 102–137, 105 Stat. 646 (1991). However, since we assume the Jemez Pueblo would have concurrent civil jurisdiction, we do not find the *Duro* holding or the subsequent Congressional action directly relevant to our decision. *See State v. Pena,* 117 N.M. 528, 873 P.2d 274 (Ct.App.1994) (N.M.Ct.App. filed this day) ].