MILNE v. HUDSON2022 OK 84Case Number: 119498Decided: 10/25/2022THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 84, __ P.3d __

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

 

 

ANDREA SUE MILNE Plaintiff/Appellee,
v.
HOWARD JEFFREES HUDSON, JR., Defendant/Appellant.

Appeal from the District Court of McIntosh County
Honorable Brendon Bridges, Trial Judge

¶0 Plaintiff/Appellee Milne applied for a civil protection order against Defendant/Appellant Hudson in the District Court of McIntosh County. Hudson objected, claiming that the district court had no jurisdiction to enter the order. Hudson argued that because McIntosh County is within the boundaries of the Muscogee Reservation, Milne is a member of the Muscogee Nation, and Hudson is a member of the Cherokee Nation, the McIntosh District Court had no jurisdiction to enter a civil protective order against him. The trial court denied the objection and entered the civil protection order. We affirm the trial court's decision.

APPEAL PREVIOUSLY RETAINED;
ORDER OF THE DISTRICT COURT AFFIRMED

Heather Cook, Norman, Oklahoma, Heather Cook P.L.L.C., for Defendant/Appellant;

No appearance for Plaintiff/Appellee.

KUEHN, J.:

¶1 Appellee Andrea Sue Milne dated Appellant Howard Hudson. During an argument, Hudson became violent with Milne. Milne applied to the District Court of McIntosh County for a civil protection order, as the couple dated in in Eufaula, Oklahoma. She stated in her application, and testified at a hearing, that Hudson first attacked her in a car, slamming her head into the dashboard. When they got to her house, he hit her and threw her across her yard. Finally, he pushed his way into her house, grabbed some of his belongings, and struck her in front of her children. When the children came to her aid, he absconded, but returned later and threatened to burn the house down. Milne testified that after the afternoon of violent acts, he stalked her at home, around town, and at her workplace. This application and testimony, though not tested by investigation or cross-examination, were certainly enough to justify an order of protection.

¶2 It is in this context that we approach the narrow issue presented: did the District Court of McIntosh County have jurisdiction to issue a civil protection order?

¶3 It is important to emphasize what this case is not about. We are not concerned with the enforcement of an existing protection order. We are also not concerned with any possibility of Hudson's criminal prosecution based on Milne's allegations. We focus only on whether a state district court has jurisdiction to issue a civil order, protecting an Oklahoma citizen from violence, at the citizen's request, where both parties are also citizens of sovereign Indian Nations and the violent acts occurred within the boundaries of both the State of Oklahoma and the Muscogee Nation.

PROCEDURAL HISTORY

¶4 Milne filed a petition for civil protection order against Hudson with the Court Clerk of McIntosh County on October 21, 2020. The District Court issued an emergency protection order, and then, after a hearing, issued an interim order of protection and continued the evidentiary hearing to March 15, 2021. Prior to the evidentiary hearing, Hudson filed a motion to dismiss for lack of jurisdiction. The trial court heard argument on this motion, orally denied it, and filed a written order denying the motion. On March 15, the trial court also issued a final order of protection to remain in effect for five years from the date of issue. Hudson timely filed this Petition in Error, and this Court retained the appeal. Hudson filed a brief in support of his appeal on December 14, 2021. Despite direction from this Court, Milne did not file a brief in response, and the case was submitted for consideration based on the filings submitted by Hudson.

STANDARD OF REVIEW

¶5 While this case involves a civil protection order, the issue is whether the district court had jurisdiction. This is a question of law, reviewed de novo; we conduct "a plenary, independent, and non-deferential examination of the trial court's rulings of law." Sheffer v. Buffalo Run Casino, PTE, Inc., 2013 OK 77315 P.3d 359see also Mustang Production Co. v. Harrison, 94 F.3d 1382, 1384 (10th Cir. 1996) (federal courts will review tribal court's decision regarding jurisdiction in Indian Country de novo).

McGIRT v. OKLAHOMA DOES NOT RESOLVE THIS CLAIM

¶6 Hudson argues the outcome of this case is determined by the decision in McGirt v. Oklahoma, 140 S.Ct. 2452 (2020). He is mistaken. While that decision sets the stage for our analysis, its outcome is not controlling. Its holding -- that the State cannot prosecute a crime committed by a tribal citizen, against a tribal citizen, in Indian Country -- cannot control the analysis or outcome of the civil-law issues raised in this case.

¶7 However, in McGirt, the United States Supreme Court held that the Muscogee Nation reservation was never disestablished and continues to be Indian Country. McGirt, 140 S.Ct. at 2468. With that finding, activity supporting the protection order in this case occurred in Indian Country; neither party disputed this fact below, and the trial court accepted it when considering the jurisdictional question. Our analysis thus focuses on the issue of civil jurisdiction in Indian Country. And we do not undertake this analysis in a vacuum. Decades of settled law, both state and federal, inform our decision. McGirt expanded the popular understanding of the extent of Indian Country in Oklahoma. This necessarily expands the law we may consider and apply in cases raising Indian Country issues. But McGirt did not itself change the applicable civil law.

THE INDIAN CIVIL RIGHTS ACT DOES NOT RESOLVE THIS CLAIM

¶8 First, we address the trial court's findings. The trial court relied on a portion of the Indian Civil Rights Act of 1968, 25 U.S.C § 1304(b)(2), to deny Appellant's motion -- understandably, since the parties referred to that statute.

¶9 In relying on this statute, the trial court put the cart before the horse. The question was whether the trial court could issue a civil protection order at all. It is clear from Section 1304(b)(2) that, after an order is issued, the state district court would have had authority to enforce it. But Section 1304 does not address under what circumstances any sovereign court may issue such an order.

THE DISTRICT COURT HAD JURISDICTION TO ISSUE THE CIVIL
PROTECTION ORDER

¶10 Hudson primarily argues that the tribal court had jurisdiction to issue a protection order against him. We agree. Federal law clearly gives tribal courts full civil jurisdiction to issue and enforce protection orders involving any person. However, that does not resolve the issue before this Court. Hudson claims that only a tribal court could have exercised jurisdiction over him to issue a protection order. This is not the case.

The Tribal Court Does Not Have Exclusive Jurisdiction

¶11 Generally speaking, and depending on the Indian status of the parties, Indian tribes have civil jurisdiction over cases occurring within Indian Country. It is well established that the federal statutory definition of Indian Country in 18 U.S.C. § 1151 applies in both civil and criminal contexts. See Alaska v. Native Village of Venetie Tribal Government, 522 U.S. 520, 527 (1998); DeCoteau v. District County Court for Tenth Judicial Dist., 420 U.S. 425, 427 n.2 (1975); Mustang, 94 F.3d at 1385.

¶12 However, this jurisdiction is not necessarily exclusive. The United States Supreme Court has observed that an "exercise of tribal power beyond what is necessary to protect tribal self-government or to control internal relations is inconsistent with the dependent status of the tribes, and so cannot survive without express congressional delegation." Montana v. U.S., 450 U.S. 544, 564 (1981). Montana was concerned with the extension of a tribe's authority over non-tribal citizens and discussed the limited nature of tribal sovereign authority in that context. Tribes may regulate the activities of nonmembers who enter consensual relationships "through commercial dealing, contracts, leases, or other arrangements" with the tribe or tribal members. Montana, 450 U.S. at 565; United States v. Cooley, 141 S.Ct. 1638, 1642-43 (2021). And tribes may exercise civil authority over the conduct of non-Indians when the "conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." Montana, 405 U.S. at 565; Cooley, 141 S.Ct. at 1642-43. Where a reservation lies within state boundaries, that fact does not automatically exclude all state regulatory authority; "an Indian reservation is considered part of the territory of the State." Nevada v. Hicks, 533 U.S. 353, 361-62 (2001) (quoting U.S. Dept. of Interior, Federal Indian Law 510 and n.1 (1958)).

¶13 We recognize that the Montana test refers to tribal authority over non-Indians. However, in Lewis v. Sac and Fox Tribe of Oklahoma Housing Authority, this Court applied a very similar test to the question of state jurisdiction over disputes where both parties are Indian. Lewis v. Sac and Fox Tribe of Oklahoma Housing Authority, 1994 OK 20896 P.2d 503cert. denied, 516 U.S. 975 (1995). There, the Sac and Fox Housing Authority entered into an agreement with Indian buyers to convey a fee simple estate, including mineral rights. The Sac and Fox Nation had established its Housing Authority pursuant to federal regulations.

¶14 This Court disagreed. We first noted the longstanding federal policy, recognized by the United States Supreme Court, of fostering tribal autonomy and self-government. Lewis, 1994 OK 20Id. at ¶ 10, 896 P.2d at 508 (emphasis omitted). We concluded that, to determine whether state courts have jurisdiction where Indian interests are concerned, we must discover whether Congress has explicitly withdrawn state court jurisdiction, or whether the interest infringes on tribal self-government.Id. at ¶ 12, 508-09.

Congress Did Not Restrict Exclusive Jurisdiction to Tribal Courts

¶15 Congress has clearly authorized tribal courts to issue civil protection orders.

For purposes of this section, a court of an Indian tribe shall have full civil jurisdiction to issue and enforce protection orders involving any person, including the authority to enforce any orders through civil contempt proceedings, to exclude violators from Indian land, and to use other appropriate mechanisms, in matters arising anywhere in the Indian country of the Indian tribe (as defined in Section 1151) or otherwise within the authority of the Indian tribe.

18 U.S.C. § 2265(e). However, the plain language of this statute does not confer exclusive civil jurisdiction. Where Congress intends to give exclusive jurisdiction to federal and/or tribal courts, and to remove state jurisdiction, it has done so explicitly. 18 U.S.C. § 1153 (granting "exclusive jurisdiction" in certain Indian Country cases to tribes or the federal government).

¶16 Section 2265(e) does not explicitly refer to exclusive tribal court jurisdiction. Moreover, the language does not imply exclusive jurisdiction. Rather, it includes tribal courts within the list of sovereigns which may issue civil protection orders. The statute is entitled "Full faith and credit given to protection orders", and its first clause ensures that the courts of each sovereign (tribal, federal, territory or state) will give full faith and credit to a civil or criminal protection order, no matter where it was issued. 18 U.S.C. § 2265(a). Thus, Section 2265 is not a bar to exercise of state district court jurisdiction to enter civil protection orders.

The State and Tribe Have the Same Interest in Civil Protection Orders

¶17 As a rule, Oklahoma's interests and the interests of a tribal sovereign nation may run parallel but will not completely coincide. State laws and tribal laws may resemble one another, but the jurisdictions may impose different resolutions of conflict, or consequences for behavior, or procedures for redress. And, as noted above, a tribe may have exclusive civil jurisdiction, including over non-Indians, where conduct threatens its political integrity, economic security, or the health and welfare of its citizens. Cooley, 141 S.Ct. at 1643.

¶18 However, civil protection orders are different. They are individually tailored and narrowly designed with a single goal -- to protect the victim of abuse. Universally, they are recognized in sister courts no matter their court of origin. Tribal governments clearly have a strong interest in protecting their citizens from the violence, threats, stalking, harassment and other behavior which may be covered by a civil protection order. The State of Oklahoma shares those exact same interests in protecting its citizens. The conduct giving rise to civil protection orders identically threatens the health and welfare of citizens of both the Muscogee Nation and the State of Oklahoma. And each one has chosen the same legal vehicle in response.

¶19 Most importantly for our analysis, the Tribe and the State here have an identical goal: to provide each individual citizen a swift path to safety, with the combined weight of all the involved sovereigns ready to enforce it. The point of a civil protection order is the promise of immediate action on the individual's behalf. A terrified person may be trying to escape physical or sexual violence. They may be trying to go home or to work or school or church -- to go about the everyday business of living -- unmolested, without being under surveillance and disruption from a persistent stalker. They may be beset by constant, disturbing, unwelcome communications. The swiftest and surest path to aid is to find the closest avenue for legal protection. Maybe the tribal courthouse is nearby. Maybe it is in another county -- another part of the state, even -- but a county courthouse is near to hand. The most effective way to achieve the combined tribal and State goal here is to give that scared victim every option to find their swift path to safety.

¶20 Milne, the person seeking a civil protection order, is a citizen of both the State and the Muscogee Nation. And, within the geographic boundaries of both the State and the Muscogee Reservation, the Tribe's and State interests are the same. Milne needed protection from violent behavior and stalking. She went to the nearest venue of her choice as a citizen, her county courthouse, for swift relief, and it was granted. Federal law does not prohibit that grant of relief, and equity compelled its issuance. This is that instance in which the exercise of State jurisdiction does not infringe on the interests of a tribal government but serves as an additional safeguard to those interests.

CONCLUSION

¶21 Our holding is narrow. As we said in Lewis, "Today's pronouncement is not to be understood as a broad declaration that all litigation of Indian rights lies within the inherent constitutional cognizance of Oklahoma state courts." Lewis, 1994 OK 20

¶22 The Order of the District Court is affirmed.

CONCUR: KANE, V.C.J., and KAUGER, WINCHESTER, EDMONDSON, COMBS (by separate writing), ROWE and KUEHN, JJ.

CONCUR IN RESULT: DARBY, C.J. (by separate writing).

CONCUR IN JUDGMENT: GURICH, J. (by separate writing)

FOOTNOTES

63 O.S. §§ 1051et seq.

Lewis rejected previous Oklahoma case law which had held Indian nations had exclusive jurisdiction over all civil matters arising among Indian parties in Indian county, effectively overruling Housing Authority of the Seminole Nation v. Harjo, 1990 OK 35790 P.2d 1098Ahboah v. Housing Authority of Kiowa Tribe of Indians, 1983 OK 20660 P.2d 625

See also Oklahoma v. Castro-Huerta, No. 21-429 (U.S. June 29, 2022) 597 U.S. __, 142 S.Ct. 2486 (absent explicit direction otherwise, states have concurrent jurisdiction to prosecute non-Indians for crimes committed in Indian Country).

. Public Law 280 was originally limited to six named states, not including Oklahoma. 18 U.S.C. § 1162; 28 U.S.C. 1360. Under Sections 1321 and 1322, a state not named in Public Law 280 may, with tribal consent, enact legislation to support concurrent criminal and civil jurisdiction. Oklahoma never attempted to assume jurisdiction under Public Law 280.

 

 

Darby, C.J., concurring in result:

¶1 I concur with the Court's judgment, but write separately to explain my understanding of the legal framework for when an Oklahoma state district court, a court of general jurisdiction, is otherwise preempted (or ousted)

¶2 In this case, Hudson, a Cherokee Indian, challenges the McIntosh County District Court's denial of his motion to dismiss; he claims that the Muscogee (Creek) Nation's Tribal District Court has exclusive jurisdiction. Because state jurisdiction is not preempted, does not infringe on the Creek Nation's right to self-government, and the exercise of tribal power is not necessary to control internal relations among members, i.e. the protective order at issue involves a member Indian and a nonmember Indian,Fisher v. Dist. Court, 424 U.S. 382, 387, 96 S. Ct. 943, 943, 947, 47 L. Ed. 2d 106 (1976); Montana v. United States, 450 U.S. 544, 564-66, 101 S. Ct. 1245, 1257-58, 67 L. ED. 2d 493 (1981). A review of the Muscogee (Creek) Nation Code reveals that the Nation's Tribal District Court actually has concurrent jurisdiction with the State, not exclusive jurisdiction. Muscogee (Creek) Nation Code Ann. tit. 6, §§ 3-401, 3-402 (2010).

I. OKLAHOMA'S DISTRICT COURTS HAVE GENERAL SUBJECT MATTER
JURISDICTION AND ARE LIMITED BY THE SUPREMACY CLAUSE OF THE U.S.
CONSTITUTION.

¶3 First, we must consider the source and scope of the state district courts' subject matter jurisdiction and understand how it differs from that of the Creek Nation's Tribal District Court. Subject matter jurisdiction is the "power to deal with the general subject involved in the action" and includes the power of the court "to proceed in a case of the character presented, or power to grant the relief sought" Dutton v. City of Midwest City, 2015 OK 51353 P.3d 532Pointer v. Hill, 1975 OK 73536 P.2d 358unlimited original jurisdiction of all justiciable matters" Okla. Const. art. VII, § 7(a) (emphasis added). The adjudicatory authority of Oklahoma district courts is comprehensive and only limited by the Oklahoma Constitution

¶4 When determining jurisdictional disputes for litigation arising within the external boundaries of a reservation, we must remember that Oklahoma's sovereignty does not stop at reservation borders. Castro-Huerta, 597 U.S. at ___, 142 S. Ct. at 2488. The U.S. Constitution authorizes this State to exercise jurisdiction in Indian country. Oklahoma's territory includes "Indian country." Id. at 2493.Id. The general rule is that Oklahoma is "'entitled to the sovereignty and jurisdiction over all the territory within her limits.'" Id. (citing Lessee of Pollard v. Hagan, 44 U.S. (3 How.) 212, 228, 11 L. Ed 565 (1845)).

II. INDIAN TRIBAL NATIONS ARE NOT FULL TERRITORIAL SOVEREIGNS.

¶5 In comparison, tribal courts are not courts of general jurisdiction; they are limited. See Nevada v. Hicks, 533 U.S. 353, 367, 121 S. Ct. 2304, 2314, 150 L. Ed. 2d 398 (2001). A tribe's inherent powers extend to their internal relations. Montana, 450 U.S. at 564, 101 S. Ct. at 1257-58. Tribal nations are not full territorial sovereigns. Atkinson Trading Co. v. Shirley, 532 U.S. 645, 650, 121 S. Ct. 1825, 1831, 149 L. Ed. 2d 889 (2001). Instead they are "unique aggregations possessing attributes of sovereignty over both their members and their territory. . . . The sovereignty that the Indian tribes retain is of a unique and limited character. It exists only at the sufferance of Congress and is subject to complete defeasance." United States v. Wheeler, 435 U.S. 313, 323, 98 S. Ct. 1079, 1086, 55 L. Ed. 2d 303 (1978) superseded by statute, Department of Defense Appropriations Act, 1996, Pub. L. No. 101-511, tit. VIII, § 8077(b)-(c), 104 stat. 1856, 1892-93, as recognized in United States v. Lara, 541 U.S. 193, 124 S. Ct. 1628, 158 L. Ed. 2d 420 (2004).

¶6 It is true that tribes have lost many attributes of sovereignty, but not all. Montana, 450 U.S. at 564, 101 S. Ct. at 1257. Part of a tribe's retained inherent powers included punishing tribal offenders, determining tribal membership, regulating domestic relations among members, and prescribing rules of inheritance for members. Id. "But exercise of tribal power beyond what is necessary to protect tribal self-government or to control internal relations is inconsistent with the dependent status of the tribes, and so cannot survive without express congressional delegation." Id. (citations omitted).

¶7 In distinguishing those inherent powers from those divested, the Court has said:

The areas in which such implicit divestiture of sovereignty has been held to have occurred are those involving the relations between an Indian tribe and nonmembers of the tribe . . . . These limitations rest on the fact that the dependent status of Indian tribes within [the United States'] territorial jurisdiction is necessarily inconsistent with their freedom independently to determine their external relations. But the powers of self-government, including the power to prescribe and enforce internal criminal laws, are of a different type. They involve only the relations among members of a tribe. Thus, they are not such powers as would necessarily be lost by virtue of a tribe's dependent status.

Id. (citations & quotation marks omitted).

III. FOR CASES ARISING IN INDIAN COUNTRY INVOLVING TRIBES AND THEIR
MEMBERS, OKLAHOMA DISTRICT COURTS HAVE GENERAL SUBJECT MATTER
JURISDICTION UNLESS PREEMPTED BY CONGRESS OR THE EXERCISE OF STATE JURISDICTION INFRINGES ON THE TRIBE'S RIGHT TO MAKE THEIR OWN LAWS
AND BE RULED BY THEM.

¶8 In civil cases, the determination of jurisdiction in a contest between state and tribe has depended heavily on the facts of that particular case. See, e.g., Williams v. Lee, 358 U.S. 217, 79 S. Ct. 269, 3 L. Ed. 2d. 251 (1959); Strate v. A-1 Contractors, 520 U.S. 438, 117 S. Ct. 1404, 137 L. Ed. 2d 661 (1997); Montana, 450 U.S. 544; Fisher, 424 U.S. 382.Montana v. United States, 450 U.S. 544, prescribes the following rule: an Indian tribe generally lacks civil authority over the conduct of nonmembers and non-Indians on non-Indian landIbid. The Montana Rule is not without exceptions. Id. at 565-66. One of those exceptions is when that conduct infringes on tribal self-government. Id. at 564-66. Under the Montana exception when some on-reservation conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe, the tribe will exercise power to the point necessary to protect tribal self-government or to control internal relations. Id. The conduct must do more than injure the tribe, it must ''imperil the subsistence'' of the tribal community. Plains Commerce Bank v. Long Family Land & Cattle Co., 554 U.S. 316, 341, 128 S. Ct. 2709, 2726-27, 171 L. Ed. 2d 457 (2008).

¶9 Civil protection orders regulate domestic relations among persons and are routinely matters adjudicated in Oklahoma district courts. They clearly fall within the district courts' plenary, general subject matter jurisdiction. Okla. Const. art. VII, § 7(a). To understand whether the Creek Nation's Tribal District Court had exclusive jurisdiction, the question here is really whether the McIntosh County District Court's exercise of jurisdiction unlawfully infringed on the Creek Nation's right to self-government. See Williams, 358 U.S. at 220, 79 S. Ct. at 271 ("Essentially, absent governing Acts of Congress, the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them."); see also Fisher, 424 U.S. at 386, 96 S. Ct. at 946.

¶10 In this case, Milne, a Creek Indian, filed in McIntosh County District Court a petition for a protection order against Hudson, a Cherokee Indian, for events occurring within the external boundaries of the Creek Nation reservation. Hudson attacked Milne at her home in McIntosh County.McGirt v. Oklahoma, 591 U.S. __, 140 S. Ct. 2452, L. Ed. 2d 985 (2020).

¶11 State jurisdiction in Indian country may be preempted under ordinary principles of federal law. Castro-Huerta, 142 S. Ct. at 2494. Hudson's criminal case was dismissed because the Major Crimes Act preempts state jurisdiction over "Indians" committing certain enumerated crimes in "Indian country." 18 U.S.C. § 1153 (2018).among its members. See Montana, 450 U.S. 544, 101 S. Ct. 1245. Preemption is not an issue in this case. Title 18 of the United States Code, § 2265(e) does provide "a court of an Indian tribe shall have full civil jurisdiction to issue and enforce protection orders involving any person" but it is in no way meant to create exclusive tribal jurisdiction. See Majority Op. ¶¶15-16.

¶12 If there is no preemption, then the next question concerns infringement on the Creek Nation's right to make their own laws and be governed by them. There are two categories of claims the U.S. Supreme Court has held tribes have exclusive civil jurisdiction under the infringement test: the first is where a nonmember asserts a claim against a member Indian for conduct occurring on the member Indian's reservation, see Williams, 358 U.S. at 223, 79 S. Ct. 269, 3 L. Ed. 2d 251; the second is where the cases involve internal/domestic matters, all parties are members of the same Indian Tribe, and the relevant conduct for the case occurs on that Tribe's reservation. See Fisher, 424 U.S. at 387-89. In both cases the Tribe has a strong interest in adjudicating the case as incident to their retained inherent sovereign powers.

¶13 Fisher controls the analysis in this case; however, we reach a different result with respect to the jurisdictional question because the case is distinguishable. In Fisher the United States Supreme Court held that state jurisdiction over the adoption of a Northern Cheyenne Indian child--where every party to the adoption was also a member of the Northern Cheyenne Indian Tribe and resided within the Tribe's reservation--was infringement on the right of the Tribe to govern itself. Fisher, 424 U.S. at 389, 96 S. Ct. at 948. The Court recognized the right of the Tribe to independently govern itself had been protected; the Tribe adopted a constitution and bylaws intended to "revitalize their self-government." Id. at 386-87, 96 S. Ct. at 946. Based on this, the Tribe established its Tribal Court and "granted it jurisdiction over adoptions among members of the Northern Cheyenne Tribe." Id. at 387 (internal citations omitted). The revised law said the Tribal Court "shall have jurisdiction" to review "adoptions among members of the Northern Cheyenne Tribe." Id. at 391 n.5. Acknowledging this, the U.S. Supreme Court recognized that the exercise of state-court jurisdiction over the adoption would plainly interfere with the Northern Cheyenne Tribe's self-government. Id. at 387-88. If states were also allowed to adjudicate the adoption of a member Indian wherein all parties to the adoption were also member Indians and resided within the reservation of the Tribe, the Court reasoned there would be substantial risk of different decisions and cause a decline in the Tribal Court's authority. Id., 424 U.S. 388.

¶14 Because it was infringement, the Tribe had exclusive jurisdiction over the adoption proceeding. Id. at 389. A different result would be reached, however, had the adoption involved nonmember Indians or non-Indians or both who wished to adopt a member of the Northern Cheyenne Tribe. Id. at 391 n.5 ("On all adoptions involving nonmembers of the Northern Cheyenne Tribe or non-Indians or both who wish to adopt a member of the Northern Cheyenne Tribe, the Tribal Court of the Northern Cheyenne Reservation shall have concurrent jurisdiction to hear, pass upon, and approve applications for adoption and upon written consent of the court, adoption proceedings affecting members of the Northern Cheyenne Tribe of the Northern Cheyenne Reservation may be taken up and consummated in the State Courts."). In that event, the Tribe had a law which provided that the Northern Cheyenne Reservation shall have concurrent jurisdiction with State courts. Id. This legislative decision regarding jurisdiction--to extend concurrent jurisdiction--comports with case law that reiterates tribal inherent authority is limited to their members and territory,

¶15 In our case, the Creek Nation has enacted its own code, which includes Title 6 allowing for civil protection orders; it also has its Tribal District Court. Title 6 pertains to "Children and Family Relations." Subchapter 4 regards civil procedures and remedies. Notably, § 3-401 of the Creek Code grants to the Nation's Tribal District Court full civil jurisdiction to issue protection orders in certain instances, but it does not claim exclusive jurisdiction for itself.

§ 3--401 Civil jurisdiction
The District Court has full civil jurisdiction to issue protection orders if the petitioner currently or temporarily resides in the Muscogee (Creek) Nation territorial jurisdiction, if the respondent currently or temporarily resides in the Muscogee (Creek) Nation territorial jurisdiction or if the domestic, dating or family violence occurred in the Muscogee (Creek) Nation territorial jurisdiction or on other land under the authority of the Muscogee (Creek) Nation; provided that such civil jurisdiction may be exercised regardless of the Indian or non-Indian status of petitioners and respondents. There is no minimum requirement of residency to petition the District Court for an order for protection. In accordance with 18 U.S.C. § 2265(e), the District Court has full civil jurisdiction to enforce protection orders issued by the District Court and to enforce foreign protection orders pursuant to Title 6, §§ 3--415, 3--416 and 6--3--417.

Muscogee (Creek) Nation Code Ann. tit. 6, § 3-401 (West 2010), as amended by Act of March 28, 2016, NCA 16-038, sec. 3, § 3-401, at 30-31, available at http://www.creeksupremecourt.com/wp=content/uploads/NCA-16-038-part-2.pdf.

¶16 The next section, § 3-402, lists those petitioners eligible for civil protection orders in the Creek Tribal District Court--for each category of petitioner the code provision provides that they "may seek relief," "may file a civil petition for an order," or " may request an emergency temporary protection order"

§ 3--402 Eligible petitioners for civil protection order
A. Petition by victim. Any victim of domestic violence, stalking, harassment, sexual assault, dating violence or family violence may seek relief by filing a civil petition for protection order with the District Court as an independent action or by a motion in a pendent lite order in another proceeding on behalf of their self and/or any domesticated animals threatened. Provided, that if made by oral motion it shall be promptly memorialized by written motion.

B. Petition on behalf of child. A parent, guardian, or other representative may file a civil petition for an order for protection on behalf of a child or incapacitated adult or any minor age sixteen (16) or seventeen (17) years may seek relief under the provisions of this Code.

C. Motion by Prosecutor. The Prosecutor may move for an order of protection on behalf of a victim, minor child or incapacitated adult in an independent action or as a pendent lite order in another proceeding provided that such motion is memorialized by a written motion.

D. Request for emergency temporary order. If the domestic, dating or family violence, stalking, harassment or sexual assault occurs when the District Court is not open for business, such person may request an emergency temporary protection order as provided by Title 6, §§ 3--306 and 3--405. The District Judge or other Court officer with authority to issue an order for protection shall be available twenty-four (24) hours a day to hear motions or petitions for emergency orders for protection.

Muscogee (Creek) Nation Code Ann. tit. 6, § 3-402 (West 2010), as amended by Act of March 28, 2016, NCA 16-038, sec. 3, § 3-402, at 31, available at http://www.creeksupremecourt.com/wp=content/uploads/NCA-16-038-part-2.pdf.

¶17 For civil protection orders the Creek Code is permissive and allows any person within their territorial limits to file a petition for civil protection order. The Code provides for concurrent jurisdiction.

IV. CONCLUSION

¶18 The Creek Nation Tribal Court and McIntosh County District Court have concurrent jurisdiction; tribal jurisdiction is not exclusive as it does not meet the criteria under Montana, or more specifically, Fisher.

¶19 In litigation between a member Indian and a nonmember "arising out of conduct on an Indian reservation, resolution of conflicts between the jurisdiction of the state and tribal courts has depended, absent a governing Act of Congress, on 'whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them.'" Fisher, 424 U.S. at 386, 96 S. Ct.at 946 (emphasis added).

¶20 Milne could have filed a civil protection order petition in more than one court. Nowhere in the Creek Code is exclusive jurisdiction claimed for the issuance of civil protection orders. No infringement on the right of the Creek Nation to govern itself can be shown in this case. Until there is some conduct that injures the Tribe's right to self-government to the extent required under federal jurisprudence, there can be no infringement. The McIntosh County District Court had jurisdiction.

FOOTNOTES

Lewis v. Sac & Fox Tribe of Okla. Hous. Auth., 1994 OK 20896 P.2d 503

Under our system of federalism, a state's sovereignty is concurrent with that of the federal government, subject only to limitations imposed by the Supremacy Clause. Yellow Freight System, Inc. v. Donnelly teaches that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States. To give federal courts exclusive jurisdiction over a federal cause of action, Congress must, in an exercise of its powers under the Supremacy Clause, affirmatively divest state courts of their presumptively concurrent jurisdiction. In Gulf Offshore v. Mobil Oil the Court identified three different methods by which a congressional state-court ouster may be effected --- (1) by an explicit statutory directive, (2) by unmistakable implication from legislative history, or (3) by a clear incompatibility between state-court jurisdiction and federal interests.

The constitutional ouster-of-jurisdiction doctrine is not to be confused with federal preemption. Preemption occurs when federal law displaces a body of state law on the same subject. Unlike state-court ouster, which requires that we examine the law for the presence of an explicit statutory directive conferring exclusive federal-court jurisdiction, preemption is a matter of congressional intent, which may be effected even by regulations of a federal agency acting within the scope of congressionally delegated authority. Preemption alone cannot divest state courts of jurisdiction to entertain federal-law claims.

(Internal quotations and footnotes omitted).

McGirt v. Oklahoma, 591 U.S. ___, 140 S. Ct. 2452, 207 L. Ed. 2d 985 (2020) held that the Muscogee (Creek) Nation's Reservation was never disestablished and thus remains "Indian country" under the definition of the Major Crimes Act at 18 U.S.C. § 1151 (2018). Ibid. at 2460-82. As of June 29, 2022, the U.S. Supreme Court has recognized the following reservations within the external boundaries of Oklahoma: Creek, Cherokee, Choctaw, Chickasaw and Seminole Reservations. Oklahoma v. Castro- Huerta, 597 U.S. ___, 142 S. Ct. 2486, 2490, 213 L. Ed. 2d 847 (2022).

See, e.g., Williams v. Lee, 358 U.S. 217, 79 S. Ct. 269, 3 L. Ed. 2d. 251 (1959) (transaction took place on reservation, the Tribe had developed legal court system, the defendant was a reservation Indian); Strate v. A-1 Contractors, 520 U.S. 438, 117 S. Ct. 1404, 137 L. Ed. 2d 661 (1997) (non-Indian owned business defendant at time of accident was subcontractor for wholly owned business of the Tribe, accident occurred within the external boundaries of the reservation, but on alienated, non-Indian land); Montana v. United States, 450 U.S. 544, 101 S. Ct. 1245, 67 L. Ed. 2d 493 (1981) (regulation of on-reservation conduct, but on non-Indian fee land by non-Indian persons); Fisher v. Dist. Court, 424 U.S. 382, 96 S. Ct. 943, 47 L. Ed. 2d 106 (1976) (per curium) (adoption of tribal member wherein parents were tribal members and prospective adoptive parents were tribal members).

extends to its members, not nonmember Indians or non-Indians. See Duro v. Reina, 495 U.S. 676, 110 S. Ct. 2053, 109 L. Ed. 2d 693 (1990); Montana, 450 U.S. 544 (1981); see also Nevada v. Hicks, 533 U.S. 353, 377 n.2, 121 S. Ct 2304, 2319 n.2, 150 L. Ed. 2d 398 (2001) (Souter, J., concurring).

See infra. Section 3-401 authorizes any person to file a protection order if the petitioner resides within Creek Nation's territorial jurisdiction. The Indian status is irrelevant.

except as otherwise provided in this Article, and such powers of review of administrative action as may be provided by statute." Okla. Const. art. VII, § 7(a) (emphasis added).

Except as otherwise provided in sections 1154 and 1156 of this title, the term "Indian country", as used in this chapter, means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.

Williams v. Lee, 358 U.S. 217, 79 S. Ct. 269, 3 L. Ed. 2nd 251 (1959); see also Castro Huerta, 142 S. Ct. at 2494 ("[A] State's jurisdiction in Indian country may be preempted (i) by federal law under ordinary principles of federal preemption, or (ii) when the exercise of state jurisdiction would unlawfully infringe on tribal self-government").

See supra, note 3.

See State v. Howard Jefferees Hudson, Jr., No. CF-2020-00187 in McIntosh County. The case was dismissed 3/2/2021 based on McGirt.

upra note 12.

(a) Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnapping, maiming, a felony under chapter 109A, incest, a felony assault under section 113, an assault against an individual who has not attained the age of 16 years, felony child abuse or neglect, arson, burglary, robbery, and a felony under section 661 of this title within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

(b) Any offense referred to in subsection (a) of this section that is not defined and punished by Federal law in force within the exclusive jurisdiction of the United States shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense.

18 U.S.C. § 1153 (2018).

See Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians, 471 U.S. 845, 854, 105 S. Ct. 2447, 2453, 85 L. Ed. 2d 818 (1985).

United States v. Mazurie, 419 U.S. 544, 557, 95 S. Ct. 710, 717, 42 L. Ed. 2d 706 (1975); Wheeler, 435 U.S. 313, 98 S. Ct. 1079, 55 L. Ed. 2d 303 (1978); Montana, 450 U.S. 544, 101 S. Ct. 1245, 67 L. Ed. 2d 493 (1981).

Strate, 520 U.S. at 453, 117 S. Ct. at 1413; Plains Commerce Bank, 554 U.S. 316, 128 S. Ct 2709, 171 L. Ed. 2d 457 (2008); Nevada v. Hicks, 533 U.S. 353, 121 S. Ct. 2304, 150 L. Ed. 2d 398 (2001).

 

 

COMBS, J., with whom KAUGER, J., joins, concurring specially:

¶1 In my opinion, this case comes down to the plain language of the state statute and the tribal statute. The state statute provides:

A. A victim of domestic abuse, a victim of stalking, a victim of harassment, a victim or rape, any adult or emancipated minor household member on behalf of any other family or household member who is a minor or incompetent, or any minor age sixteen (16) or seventeen (17) years [to] seek relief under the provision of the Protection from Domestic Abuse Act.

1. The person seeking relief may file a petition for a protective order with the district court in the county in which the victim resides, the county in which the defendant resides, or the county in which the domestic violence occurred. . . .

22 O.S.Supp.2020, § 60.2

The [tribal] District Court has full civil jurisdiction to issue protection orders if the petitioner currently or temporarily resides in the Muscogee (Creek) Nation territorial jurisdiction, if the respondent currently or temporarily resides in the Muscogee (Creek) Nation territorial jurisdiction or if the domestic, dating or family violence occurred in the Muscogee (Creek) Nation territorial jurisdiction or on other land under the authority of the Muscogee (Creek) Nation . . . regardless of the Indian or non-Indian status of petitioners and respondents . . . . [and with] no minimum requirement of residency to petition the District Court for an order for protection.

Muscogee (Creek) Nation Code Ann. tit. 6, § 3-401 (West 2010), as amended by Act of March 28, 2016, NCA 16-038, sec. 3, § 3-401, at 30--31, available at http://www.creeksupremecourt.com/wp-content/uploads/NCA-16-038-part-2.pdf. Neither statute specifies that any party have "Indian or non-Indian status"; only the location of the domestic violence or of one party's residence matters. Thus, where that location can be classified as both state and tribal territory, both courts have jurisdiction--that is, concurrent jurisdiction--to issue a protective order.

 

 

Gurich, J., concurring in judgment:

¶1 Although I believe the majority opinion reaches the correct conclusion in this case, I write separately to caution against interpreting the Court's ruling too broadly. To the extent the opinion could be construed as permitting state court jurisdiction over any protective order matter arising in Indian country, irrespective of the parties' statuses as member Indians, such a declaration is contrary to long-standing federal Indian law and I cannot join such a decree.

¶2 The domestic violence giving rise to the victim's protective order issued by the state district court took place within the boundaries of the Muscogee (Creek) Reservation;

¶3 Generally speaking, an Indian may bring a civil action against a non-Indian in state court. Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Eng'g, P.C., 467 U.S. 138, 148--49, 104 S.Ct. 2267, 2274--75, 81 L.Ed.2d 113 (1984).Id. Renowned federal Indian law scholar, Felix Cohen, noted that "[i]n matters not affecting either the Federal Government or the tribal relations, an Indian has the same status to sue and be sued in state courts as any other citizen."See Fisher v. Dist. Ct. of Sixteenth Jud. Dist. of Mont., 424 U.S. 382, 389, 96 S.Ct. 943, 947, 47 L.Ed.2d 106 (1976). Similarly, a state court would lack jurisdiction to hear a protective order sought by a non-Indian or nonmember against a member Indian, if the acts giving rise to the civil proceeding took place on the member's tribal reservation. See Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959).Fisher nor Williams dealt with a civil lawsuit in which the plaintiff is a member Indian and the defendant is a nonmember Indian.

¶4 In Washington v. Confederated Tribes of the Colville Indian Reservation, 447 U.S. 134, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980), the Supreme Court found the state could lawfully tax cigarette sales to nonmembers and non-Indians, even though those transactions occurred on reservation land. To reach this decision, the Court effectively found that the tribes and state enjoyed concurrent jurisdiction to tax nonmembers and non-Indians, and that the state's imposition of taxes were neither preempted by federal law nor an infringement on tribal sovereignty. Id. at 155-56, 161. In reaching the latter conclusion, the Court explained:

Nor would the imposition of Washington's tax on these purchasers contravene the principle of tribal self-government, for the simple reason that nonmembers are not constituents of the governing Tribe. For most practical purposes those Indians stand on the same footing as non-Indians resident on the reservation. There is no evidence that nonmembers have a say in tribal affairs or significantly share in tribal disbursements. We find, therefore, that the State's interest in taxing these purchasers outweighs any tribal interest that may exist in preventing the State from imposing its taxes.

Id. at 161; see also Wacondo v. Concha, 117 N.M. 530, 873 P.2d 276 (N.M. Ct. App. 1994). Wacondo presents facts and legal issues strikingly similar to those in the present dispute. Ms. Wacondo and Ms. Salas filed a lawsuit in state court against Mr. Concha for personal injuries arising out of a shooting on the Jemez Pueblo in New Mexico. Ms. Wacondo was a member of the Jemez peoples and resident of the Jemez Pueblo. Ms. Salas was a member of the Zia peoples, but she resided outside of the boundaries of any pueblo. Mr. Concha was a member of the Taos Pueblo, however, there is no mention of his residence in the opinion. Defendant Concha moved to dismiss the action, arguing the state court lacked jurisdiction because the plaintiffs' cause arose on tribal lands and involved members of federally recognized tribes. On review, the appellate court considered one issue--whether Indian sovereignty or federal law would require the state courts to recognize exclusive jurisdiction in the Jemez courts because all of the parties were Indian and the subject of the suit occurred on the Jemez Pueblo. Finding that nothing foreclosed a member Indian from bringing suit against a non-member Indian in state court, the court opined:

The facts here compel the conclusion that the "nonmember" Defendant cannot require Plaintiffs to forego their option of seeking redress in state district court. Nothing in our decision implies the Jemez Pueblo is in any way limited in providing a forum or remedies in this dispute. Our holding is merely that neither federal law nor tribal sovereignty precludes Indian plaintiffs from pursuing their state remedies against a nonmember Indian in state court.

Id. at 534. Ultimately, the New Mexico Court of Appeals found the state district court had concurrent jurisdiction to hear the matter and reversed the dismissal order. Id.

¶5 It is my belief that the majority gives undue weight to cases such as Montana v. United States, 50 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981),United States v. Cooley, 593 U.S. ___, 141 S.Ct. 1638, 210 L.Ed.2d 1 (2021),Nevada v. Hicks, 533 U.S. 353, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001).tribe lacked jurisdiction to act.Bracker, 448 U.S. at 143.

¶6 As to the first question, exercise of jurisdiction by the McIntosh County District Court in this case would not substantially infringe on the right of the Muscogee (Creek) Nation to govern itself. Although the Tribe has its own laws and court system designed to protect victims of domestic violence, there is no significant infringement of tribal sovereignty through the voluntary state court forum selection by Milne. Further, issuance of the protective order only placed legal restrictions on the nonmember, Hudson. And as the majority notes, the Muscogee (Creek) Nation's interests are aligned with its tribal member obtaining the quickest and most efficient remedy to ensure her safety. If such protection can best be obtained by seeking relief in state district court, this best serves the Nation and Milne. Also noted by the majority, Milne is not only a member of the Muscogee (Creek) Nation, but she is also an Oklahoma citizen. Therefore, nothing should preclude an Oklahoma citizen from seeking redress against a nonmember or non-Indian in our state courts, lest they be denied equal protection of the law and/or deprived of access to this State's judicial system. OKLA. CONST. art. II, §§ 6 & 7. However, as noted above, I do believe the assumption of jurisdiction by Oklahoma courts under different facts could offend tribal sovereignty.

¶7 In New Mexico v. Mescalero Apache Tribe, 462 U.S. 324, 334, 103 S.Ct. 2378, 76 L.Ed.2d 611 (1983), the Supreme Court noted "[s]tate jurisdiction is preempted by the operation of federal law if it interferes or is incompatible with federal and tribal interests reflected in federal law, unless the State interests at stake are sufficient to justify the assertion of State authority." Concepts of sovereignty over a tribe's reservation and members "must inform the determination whether the exercise of state authority has been pre-empted by operation of federal law." Bracker, 448 U.S. at 143. An express congressional statement of preemption is not required. Id. at 144 (citing Warren Trading Post Co. v. Ariz. Tax Comm'n, 380 U.S. 685, 85 S.Ct. 1242, 14 L.Ed.2d 165 (1965)). To properly assess preemption in this case, at least two federal enactments are at issue--Public Law 280 and the Violence Against Women Act, supra note 10, at 5. I agree with the majority that VAWA does not expressly preempt an Oklahoma court from exercising civil jurisdiction in this instance; however, I believe the outcome is limited to the unique facts presented. Public Law 280,See Oklahoma v. Castro-Huerta, ___ U.S. ___ , 142 S.Ct. 2486, 213 L.Ed.2d 847 (2022) (Gorsuch, J., dissenting). However, because the appellant failed to address preemption under P.L. 280, I reserve my consideration of the matter for another day. Bane v. Anderson, Bryant & Co., 1989 OK 140786 P.2d 1230

¶8 Although I agree with the majority that the McIntosh County District Court could exercise civil jurisdiction over this matter, it was only proper under the unique facts presented. I cannot fully accede in the majority's pronouncement.

FOOTNOTES

See McGirt v. Oklahoma, 591 U.S. ___, 140 S.Ct. 2452, 2482, 207 L.Ed.2d 985 (2020) (finding the Muscogee (Creek) reservation never disestablished by Congress).

The Crucible of Sovereignty: Analyzing Issues of Tribal Jurisdiction, 31 Ariz.L.Rev. 329, 355 (1989). Court decisions, however, have identified a third category of persons who impact the requisite jurisdiction analysis--nonmember Indians (those individuals who meet the definition of Indian, but who are not members of the tribe where the civil transaction arose). Id.

Id. at 149. But see Roe v. Doe, 2002 ND 136, ¶ 19, 649 N.W.2d 566, 574 (explaining that "nothing in [Three Affiliated Tribes] indicates it intended to limit the general rule of allowing state court jurisdiction over claims brought by an Indian against a non-Indian to only those cases in which the tribe was the plaintiff and the tribal court lacked jurisdiction over the claim at the time the suit was instituted").

Handbook of Fed. Indian Law, ch. 19, § 5, at 379 (1942 ed.).

See also Roe, 2002 ND 136, ¶ 8, 649 N.W.2d at 569 (citing Fisher, 424 U.S. at 387-89 and Williams, 358 U.S. at 223).

Montana was whether the Crow Tribe lacked power to prohibit hunting and fishing by nonmembers on non-Indian fee land within the reservation. In concluding there was no authority, the Supreme Court opined "exercise of tribal power beyond what is necessary to protect tribal self-government or to control internal relations is inconsistent with the dependent status of the tribes." Id. at 564.

Cooley merely affirmed a tribal police officer's authority to detain and search non-Indians traveling on public rights-of-way running through a reservation for potential violations of state or federal law. Id. at 1641.

Hicks, the Supreme Court found that a tribal court lacked jurisdiction to adjudicate tort claims and an action under § 1983 against state officials. Id. at 364, 366-69.

See, e.g., Hinkle v. Abeita, 283 P.3d 877, 879-84 (N.M. Ct. App. 2012)(discussing in depth, the inapplicability of the Montana rule to a question of state court jurisdiction [not tribal] for a cause arising in Indian country). I believe reliance on Lewis v. Sac and Fox Tribe of Okla., 1994 OK 20896 P.2d 503Id. ¶ 3, 896 P.2d at 506. Second, the SFTOHA operated as a state agency, and the Sac and Fox Tribe explicitly authorized the housing agency to conduct business and exercise powers under Oklahoma law. Id. at 4, 896 P.2d at 506. Third, the Court concluded that the subject property was not located within Indian country at the time the transaction took place. Id. ¶ 24, 896 P.2d at 513.

any person. . . . in matters arising anywhere in the Indian country of the Indian tribe (as defined in section 1151)." 18 U.S.C. § 2265(e) (emphasis added). Thus, Congress has seen fit to bestow tribes with authority to adjudicate matters of domestic violence within tribal boundaries. Further, the Muscogee (Creek) Nation has enacted provisions within the Muskogee Creek Nation Code allowing the Nation's Tribal Court to issue protection orders "regardless of the Indian or non-Indian status of petitioners and respondents." Muscogee (Creek) Nation Code Ann. tit. 6, § 3-401 (West 2010), as amended by Act of March 28, 2016, NCA 16-038, sec. 3, § 3-401, at 30--31, available at http://www.creeksupremecourt.com/wp-content/uploads/NCA-16-038-part-2.pdf.

Williams, 358 U.S. at 220.

White Mountain Apache Tribe v. Bracker, 448 U.S. 136, 142, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980).